**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**September 25, 2012**

# In the Court of Appeals of Georgia

A12A1459. SLADE v. BUTLER et al.

ELLINGTON, Chief Judge.

Satundra Slade was fired from her job as a bus driver for the Atlanta Public School System ("APS"). APS challenged Slade's application for unemployment benefits, contending that she was fired for violating APS policies and was, therefore, disqualified from receiving benefits under OCGA § 34-8-194 (2) (A), and a claims examiner with the Georgia Department of Labor ("the Department") agreed. Following a hearing, a Department hearing officer found that Slade was in violation of APS rules and affirmed the claims examiner's denial of benefits. The Department of Labor's Board of Review and the Superior Court of Fulton County both affirmed the decision to deny benefits. This Court granted Slade's application for discretionary appeal. Slade contends that she did not knowingly disregard APS policies because the

policies at issue were either ambiguous or were applied retroactively to her. For the reasons set forth below, we agree and reverse.

"In considering whether the administrative tribunal properly found that [Slade] was not entitled to receive unemployment benefits, the trial court, as well as this [C]ourt, must affirm if there is any evidence to support that ruling. And we will uphold the [D]epartment's factual findings if there is any evidence to support them." (Citations and punctuation omitted.) *MCG Health, Inc. v. Whitfield*, 302 Ga. App. 408 (690 SE2d 659) (2010). "When this Court reviews a superior court's order in an administrative proceeding, our duty is not to review whether the record supports the superior court's decision but whether the record supports the final decision of the administrative agency." (Citation and punctuation omitted.) *Davane v. Thurmond*, 300 Ga. App. 474, 475 (685 SE2d 446) (2009). Pursuant to OCGA § 34-8-194 (2) (A), an individual may be disqualified from receiving unemployment compensation benefits when he or she has been discharged "for failure to obey orders, rules, or instructions or for failure to discharge the duties for which the individual was employed[.]" However,

> [b]efore such disqualification is appropriate, the employer must show that the discharge was caused by the deliberate, conscious fault of the claimant. This is in keeping with the strong public policy favoring payment of unemployment benefits to persons unemployed through no

2

fault of their own. OCGA § 34-8-2. Disqualification is an exception to the statutory scheme for unemployment benefits and the employer must show by a preponderance of the evidence that disqualification is appropriate.

(Citations and punctuation omitted.) *Jamal v. Thurmond*, 263 Ga. App. 320, 321 (1) (587 SE2d 809) (2003).

The record shows that Slade was employed with APS for 14 years. There is no evidence in the record that, during that period, she was disciplined or warned that her performance was inadequate. APS's decision to fire Slade was based upon Slade's involvement in two minor automobile accidents. In May 2009, while she was driving an APS school bus, Slade struck a car that had turned in front of her. There is no evidence that anyone was injured or that the accident caused any property damage. In March 2010, while Slade was driving her own car, she "bumped" a car that had stopped abruptly in front of her. The record does not reveal whether any traffic citations were issued to Slade or whether she was convicted of a misdemeanor traffic offense in connection with either accident.[1] Slade, however, admitted that the accidents were her fault.

---

[1] The appellate record does not contain evidence of a "conviction" for any traffic violation; rather a witness testified that Slade was terminated based upon a "report" obtained from the Department of Motor Vehicles.

3

The APS employee handbook contained a "Fleet Safety Policy" which sets forth the maximum number of motor vehicle "convictions" an approved APS bus driver is allowed during a specified period of time. Slade received a copy of the policy in August 2009. She also received a copy of the amended policy in August 2010, five months after her second accident. Both the 2009 and 2010 policies set forth "Driver Approval Criteria" as follows: (1) no Class I convictions in the last three years, (2) no more than one Class II conviction in the last three years, (3) no more than two Class III convictions in the last three years, and (4) no more than two convictions in the last three years resulting from a combination of Class II and Class III convictions. In 2009, the conviction classes were set forth thus:

> Class I – DUI; assault, manslaughter, or homicide arising out of the use of a motor vehicle.

> Class II – Failure to stop and report an accident; driving while license is suspended or revoked; reckless driving; possession of an opened alcoholic beverage container; speeding in excess of 20 mph over a posted limit; violation resulting in an at-fault accident.

> Class III – Speeding up to 20 mph over a posted limit; any additional traffic violations/at-fault accidents.

"At-fault accident," which is listed in both Class II and Class III, is not defined. The 2009 policy arguably allows for two at-fault accidents within a three-year period and, yet, simultaneously provides that a driver may not have more than one at-fault accident in a three-year period. Slade understood this policy to mean that she was permitted to have up to two at-fault accidents in a three-year period if the accidents were minor.[2] APS's transportation supervisor also testified that, every year, she told all bus drivers that they were not allowed, under this policy, to have "more than two at-fault accidents." In August 2010, APS modified the text of Class III, omitting any reference to "at-fault" accidents. Thus, under the 2010 policy, an employee may be terminated for having more than one at-fault accident within a three year period.

In affirming the Board of Review's decision, the superior court reasoned that the 2010 policy, which went into effect *after* Slade's second accident, essentially cured any ambiguity in the 2009 policy, reasoning that, since *both* policies provided that an employee may be terminated for having more than one at-fault accident, Slade, at all relevant times, understood that she could be terminated for that reason alone.

---

[2] Slade argues that the policy was likely intended to limit at-fault accidents "resulting" from the more serious Class II violations to one, while allowing two at-fault accidents resulting from less serious traffic violations, that is, those that were not included in Classes I and II. We do not address whether this interpretation is correct as we have not been tasked with resolving the ambiguity. We simply note that it exists.

Such reasoning, however, ignores the fact that the 2009 policy was ambiguous during the time it was in effect, and that both Slade and her supervisor believed that a bus driver would not be terminated for having only two at-fault Class III accidents. This interpretation was as reasonable as the alternative one that APS relied upon. Moreover, because this policy did not define "at-fault accident," it was not patently unreasonable for Slade to believe that Class II counted more severe at-fault accidents than were embraced in Class III. Because the 2009 policy was ambiguous and because Slade's interpretation of that policy was not unreasonable, there is no evidence that Slade consciously or deliberately violated the 2009 policy. See, e.g., *Davane v. Thurmond*, 300 Ga. App. at 477. ("Since disqualification of benefits requires 'deliberate, conscious fault' by the employee, an employee's bona fide effort to comply with an employer's orders is not consistent with a finding of fault.") (citation omitted). Moreover, "determination of a disqualifying fault must be made in the context of whether the employee would *reasonably expect*, under all the circumstances of employment, that sanction would result from a violation." (Citation omitted; emphasis supplied.) Id.

Only *after* the policy was amended in 2010 was Slade put on notice that more than one at-fault accident, regardless of whether the accident resulted from a minor or a serious traffic violation, would be a policy infraction that would result in

6

termination. Further, she was given this notice only *after* her second accident. Applying the 2010 policy retroactively against Slade does not cure the ambiguity under which she had been operating. Rather, it simply applies a new rule to her retroactively. Under the circumstances, Slade did not knowingly disobey her employer's 2010 policy because the policy was not in effect when she was alleged to have violated it. Thus, there is no evidence in the record that Slade consciously or deliberately violated either the 2009 or 2010 APS Fleet Safety Policy. See id.

Given the circumstances of this case, we conclude that APS did not carry its burden of showing that Slade came within the disqualification exception. Therefore, she is entitled under the law to unemployment compensation, and the superior court erred in affirming the denial of benefits. See *Barron v. Poythress*, 219 Ga. App. 775, 777 (466 SE2d 665) (1996).

*Judgement reversed. Phipps, P. J., concurs. Dillard, J., concurs in judgment only*.

A12A1459.  SLADE v. BUTLER et al.

DILLARD, Judge, concurring in judgment only.

I concur in judgment only because I do not agree with all that is said in the majority opinion.  As such, the majority's opinion decides only the issues presented in the case *sub judice* and may not be cited as binding precedent.  *See* Court of Appeals rule 33 (a).