**SECOND DIVISION
BARNES, P. J.,
MCFADDEN and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/**

**March 26, 2013**

# In the Court of Appeals of Georgia

A12A2352. FULTON COUNTY SCHOOL DISTRICT v. HERSH.

McMILLIAN, Judge.

Following the grant of its discretionary application, the Fulton County School District (the "District") appeals the superior court's order reversing the denial of unemployment benefits to Jan Hersh and awarding her attorney fees under OCGA § 9-15-14. We affirm the superior court's reversal of the denial of benefits, but we vacate the award of attorney fees against the District, and remand that issue for further consideration by the trial court.

In considering an appeal from an award or denial of unemployment benefits, "the trial court, as well as this [C]ourt, must affirm if there is any evidence to support that ruling. And we will uphold the [Georgia Department of Labor's ("DOL")] factual findings if there is any evidence to support them." (Citations omitted.) *MCG Health*

*v. Whitfield*, 302 Ga. App. 408 (690 SE2d 659) (2010). Thus, in reviewing the superior court's order, "our duty is not to review whether the record supports the superior court's decision but whether the record supports the final decision of the administrative agency." (Citation and punctuation omitted.) *Davane v. Thurmond*, 300 Ga. App. 474, 475 (685 SE2d 446) (2009). See also OCGA § 34-8-223 (b).[1]

The record here demonstrates that Hersh was a tenured seventh-grade teacher at a Fulton County middle school, when in December 2010, during a lesson on the transcontinental slave trade, she showed her "gifted" social studies class a nine-minute YouTube clip from *Amistad*, an R-rated movie. After one of the student's parents complained about the content of the clip, the school asked Hersh to resign based upon her failure to obtain supervisory or parental consent prior to showing the clip to her class. The District informed Hersh that she was being charged with insubordination, willful neglect of her duties and other good and sufficient cause. In lieu of resigning, Hersh exercised her right to a "Fair Dismissal" hearing before a tribunal (the "Termination Hearing"). The tribunal found that showing an "R" rated

---

[1] That section reads in pertinent part, "In any judicial proceeding under this Code section, the findings of the board of review as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law." OCGA § 34-8-223 (b).

2

clip without notice or consent "constitutes 'an intentional violation of a known rule or policy' so as to support a finding of willful neglect" of Hersh's duties and further demonstrated a profound lack of judgment constituting other good and sufficient cause for termination. See OCGA § 20-2-940 (a) (3) (willful neglect of duties); OCGA § 20-2-940 (a) (8) (other good and sufficient cause). On February 1, 2011, the Fulton County Board of Education voted to accept the tribunal's findings and notified Hersh by letter dated February 2, 2011, that her employment was terminated.

Hersh then applied to the DOL for unemployment benefits, and the District submitted information in response stating that Hersh was discharged on February 2, 2011, for "insubordination, willful neglect of duties [and] any other good [and] sufficient cause." The DOL denied Hersh's claim under OCGA § 34-8-194 (2) (A) based on a finding that she was fired because she "did not meet the standard of conduct your employer has the right to expect by showing a nine minute movie clip from a rated "R" movie to 7th grade students," which "is the same as violating an employer rule." Hersh then sought an administrative hearing on her claim (the "DOL Hearing").

During that hearing, a human resources specialist for the District identified the District's guidelines for showing movies in the classroom. The guidelines state that

3

"VHS/DVD rated PG, PG13, or R may not be shown without prior written permission from the principal." The guidelines further state that "VHS/DVD, rated PG or PG13, requires parental permission to be shown at the elementary or middle school levels. R rated VHS/DVD cannot be shown at the high school level without parental permission." The specialist testified, over objection, that Hersh violated the policy by showing the "R" rated YouTube clip without prior permission.

A human resources personnel investigator for the District testified that she interviewed Hersh in connection with the charges against her. During that interview, Hersh admitted that she was aware of the District's policy regarding movies on VHS and DVD. But she did not know she could not show a YouTube clip without permission, and she did not know the movie was rated "R". Hersh told the investigator that in retrospect she regretted showing the clip. The investigator testified that even if Hersh did not know the movie was rated "R," she violated board policy by showing it without prior permission. The investigator's written report of the interview indicates that Hersh admitted making an error in judgment and that "she failed to follow county and school procedure." The transcript of the interview reflects, however, that although Hersh admitted it was an error in judgment and that she did not follow procedure, she said that she did not do it intentionally.

4

Hersh testified at the DOL Hearing that she reviewed the clip before she showed it to her class and that she thought it was appropriate for a gifted seventh-grade class, even though it included brief, "National Geographic[-]type" nudity and scenes of violence that were "definitely not lollipops and sunshine." She did not know that the movie *Amistad* was rated "R," and she said no District guidelines existed with regard to internet clips, although she believed that such a policy was created after she was terminated. Rather, at the time Hersh showed the clip, she did not think she had failed to follow any required protocol because other teachers and she often used YouTube in their classes without prior permission. And the students themselves could access YouTube on school computers. If she had shown the movie in DVD or VHS format, however, she would have gotten prior permission.

The administrative hearing officer found that Hersh was aware of the policy requiring prior permission before showing DVD or VHS movies. And although Hersh was not aware of a policy pertaining to YouTube clips, the hearing officer concluded that "she should have reasonably believed that she would be required to obtain permission to show a clip taken from an actual movie." Thus, the hearing officer found that she failed to use "the degree of care expected of someone in her position" by not inquiring into *Amistad*'s rating and by "subjecting students to inappropriate

5

material without approval." The hearing officer deemed Hersh to be at fault in her discharge and upheld her disqualification from unemployment benefits under OCGA § 34-8-192 (2) (A). The DOL Board of Review affirmed the denial of benefits , and Hersh appealed the Board's determination to the superior court.

In considering Hersh's appeal, the superior court reviewed the evidence from both the DOL Hearing and the Termination Hearing, which included testimony from a number of witnesses who did not testify at the DOL Hearing. In addition, the superior court took "judicial notice that the decision to terminate [Hersh] was reversed by the State Board of Education. Likewise, the Court [took] judicial note of [Hersh's] reinstatement and reimbursement of all lost wages and benefits." The superior court concluded that the record contained no evidence that Hersh had deliberately violated a school policy. The superior court also found that although Hersh might have been guilty of a lapse in judgment, tenured teachers may not be dismissed based upon a single negligent act. See *Terry v. Houston County Bd. of Ed.*, 178 Ga. App. 296, 299 (342 SE2d 774) (1986). Thus, the superior court reversed the DOL's decision and further awarded Hersh $8,000 in OCGA § 9-15-14 attorney fees after finding that the District acted in bad faith in objecting to Hersh's unemployment benefits, thus causing her unnecessary trouble and expense.

1. We first address the District's argument that the superior court erred in considering evidence from the Termination Hearing in its review of the DOL decision. And, in fact, the transcript from the DOL Hearing contains no indication that the Termination Hearing transcript was ever admitted into evidence. Moreover, the DOL Hearing officer indicated that she would only "focus on what Ms. Hersh testifies to in regards to the transcript," that is, what Hersh says she testified to at the Termination Hearing. Nevertheless, the DOL chose to include the entire Termination Hearing transcript in the "Certified Record of the Board of Review" it filed in response to Hersh's appeal to the superior court,[2] and the superior court considered it in issuing its order. But pretermitting whether the superior court acted properly in considering the evidence from the Termination Hearing, we find that the evidence admitted at the DOL Hearing is sufficient, alone, to support the superior court's reversal of the denial of Hersh's unemployment benefits.

Under OCGA § 34-8-194 (2) (A), an individual shall be disqualified for unemployment benefits if he or she was discharged "for failure to obey orders, rules,

[2] Under OCGA § 34-8-223 (b), in any appeal to the superior court, the Commissioner of Labor is required to "certify and file with the superior court all documents and papers and a transcript of all testimony taken in the matter, together with the board of review's findings of fact and decision therein."

or instructions or for failure to discharge the duties for which the individual was employed as determined by the Commissioner [of Labor] according to the circumstances in the case." Therefore, "[i]f the employee refuses to comply with a *specific*, equitably applied and reasonable rule, then the employer may fire him or her for misconduct and be confident that no unemployment compensation benefits . . . will be paid." (Emphasis supplied.) *Millen v. Caldwell*, 253 Ga. 112, 114 (317 SE2d 818) (1984).

> Under OCGA § 34-8-194 (2) (B), however,
>
> [a]n individual shall not be disqualified for benefits under subparagraph (A) of this paragraph if, based on the rules and regulations promulgated by the Commissioner, the Commissioner determines: (i) The individual made a good faith effort to perform the duties for which hired but was simply unable to do so; (ii) The individual did not intentionally fail or consciously neglect to perform his or her job duties.

An employer, therefore, must demonstrate that the termination was caused by "the deliberate, conscious fault" of the employee before he or she may be disqualified from receiving unemployment benefits. (Citation and punctuation omitted.) *Barron v. Poythress,* 219 Ga. App. 775, 776 (466 SE2d 665) (1996). Thus, "'[f]ault' means

more than mere failure to perform one's work duties." *Millen v. Caldwell*, 253 Ga. at 113.

> This is in keeping with the strong public policy favoring payment of unemployment benefits to persons unemployed through no *fault* of their own. OCGA § 34-8-2. Disqualification is an exception to the statutory scheme for unemployment benefits and the employer must show by a preponderance of the evidence that disqualification is appropriate.

(Citations and punctuation omitted; emphasis in original.) *Barron v. Poythress,* 219 Ga. App. at 776.

Accordingly, unemployment "benefits should not be denied to an employee who has been fired for failure to comply with *unknown* work requirements, or requirements which could not have been reasonably anticipated." (Emphasis in original.) *Millen v. Caldwell*, 253 Ga. at 114. "If an employer nevertheless wishes to be arbitrary about [applying unwritten rules or in enforcing rules], Georgia law allows it nearly free rein as far as the firing is concerned, but not as far as payment of unemployment compensation benefits to the ex-employee is concerned." Id. And "[a] determination of disqualifying fault must be made in the context of whether the employee would reasonably expect, under all the circumstances of employment, that sanction would result from a violation. [Cit.]" *Barron v. Poythress*, 219 Ga. App. at

9

777. Although we are bound to apply the any evidence standard, "[w]hether there is fault assignable to [a] claimant, which is a legal requirement for disqualification, often requires a legal conclusion. [Cit.]" Id.

The DOL hearing officer never made a finding of deliberate, conscious fault on Hersh's part. Instead, the hearing officer found that Hersh "should have reasonably known" that she was required to obtain prior permission and that she "failed to use the degree of care" of someone in her position. Although the evidence demonstrated that the District had guidelines for showing VHS and DVD movies in the classroom, these guidelines are not a model of clarity. For example, although the guidelines require a teacher to obtain prior parental permission before showing a PG- or a PG13-rated VHS or DVD to middle school students, they contain no such requirement for R-rated movies. The guidelines, however, do not prohibit showing R-rated movies to middle school students, and they require parental permission before showing an R-rated VHS or DVD to high school students. Moreover, the District produced no written policy addressing materials other than VHS and DVD movies, such as materials obtained from the internet.

Hersh testified that she was aware of the policies as it related to movies in the VHS or DVD format, but she did not know at the time that it applied to internet clips,

10

as teachers at the school often showed such clips without prior permission. And even though Hersh admitted in her investigative interview that she did not follow procedure, she said that her omission was not intentional; rather, she did not believe at the time that the procedure applied to her situation. Thus, the District failed to show by a preponderance of the evidence that Hersh intentionally refused or consciously neglected to comply with a known rule, and the superior court properly reversed the ruling of the DOL Board of Review denying Hersh benefits.[3] See *Millen v. Caldwell*, 253 Ga. at 115 (finding insufficient evidence to sustain denial of benefits where employee was fired for exactly the same conduct she had engaged in many times before and no evidence existed of a written rule or an unwritten rule properly communicated to employee); *Slade v. Butler*, 317 Ga. App. 688 (732 SE2d 543) (2012) (reversing denial of benefits where employee did not knowingly disregard school system policies that were ambiguous or applied retroactively) (physical precedent only).

---

[3] Nevertheless, if Hersh was indeed reinstated with full benefits and back pay as the superior court's order indicates, her entitlement to unemployment benefits may be reduced or eliminated. See *Powell v. Dougherty Christian Academy*, 215 Ga. App. 551, 553 (451 SE2d 465) (1994) ("an individual [may] not receive other compensation based on his previous work and unemployment benefits based on the same work").

2. With regard to the award of attorney fees, the superior court found that the District

> acted in bad faith when it sought to deny [Hersh's] unemployment benefits after the tribunal panel did not substantiate the insubordination and violation of known policy allegations.[4] To that end, the Court further finds [the District and the DOL] caused [Hersh] unnecessary trouble and expense pursuing their frivolous claims against her."

The superior court also found that the record was "void of any evidence that [Hersh] deliberately or consciously violated any known rule or school board policy" and that Fulton County School District's termination of Hersh "was frivolous and legally unsupportable." It awarded Hersh attorney fees "pursuant to OCGA § 9-15-14 in the amount of $8,000.00."

An award under OCGA § 9-15-14 (a) is mandated when a party "has asserted a . . . defense . . . with respect to which there existed such a complete absence of any justiciable issue of law or fact that it could not be reasonably believed that a court would accept the asserted . . . defense." OCGA § 9-15-14 (a). See also *Interfinancial*

---

[4] We note, however, that the tribunal made a specific finding that playing the *Amistad* clip without prior approval constituted "'an intentional violation of a known rule or policy.'" And the District apparently relied upon that finding in initiating its opposition to Hersh's claim for unemployment benefits.

12

*Midtown v. Choate Constr. Co.*, 284 Ga. App. 747, 752 (3) (b) (644 SE2d 281) (2007). An award under OCGA § 9-15-14 (b) is permitted when a party's defense of an action "lacked substantial justification;" was "substantially frivolous, substantially groundless, or substantially vexatious;" when the defense "was interposed for delay or harassment," or when a party "unnecessarily expanded the proceeding by other improper conduct." OCGA § 9-15-14 (b). See also *Interfinancial Midtown*, supra, 284 Ga. App. at 752 (3) (b).

"[A]n order awarding attorney fees pursuant to [OCGA § 9-15-14] *must specifically state whether the award is made under OCGA § 9-15-14 (a) or (b)*." (Emphasis supplied; citation omitted.) *Ga. Dept. of Transp. v. Douglas Asphalt Co.*, 295 Ga. App. 421, 424 (1) (671 SE2d 899) (2009). Additionally, the court must make "express findings of fact and conclusions of law as to the statutory basis for any such award and the conduct which would authorize it." *McKemie v. City of Griffin*, 272 Ga. 843, 845 (4) (537 SE2d 66) (2000). Specificity in the award is important because the standards of appellate review are different under each subsection: the standard under subsection (a) is the "any evidence" rule; the standard under subsection (b) is abuse of discretion. *Haggard v. Bd. of Regents of Univ. System of Ga.*, 257 Ga. 524, 527 (4) (c) (360 SE2d 566) (1987).

13

Since the superior court's order awarding attorney fees to Hersh does not specify the subsection of OCGA § 9-15-14 under which it was made and does not contain the findings necessary to support such an award, the award "must be vacated and the case remanded to the superior court for consideration of the issue under the standards of awards pursuant to OCGA § 9-15-14, and to enter an award, if appropriate." *Interfinancial Midtown*, supra, 284 Ga. App. at 752-753 (3) (b) (vacating and remanding as insufficient an attorney fees award that did not specify the subsection under which it was made, that concluded appellant's position was "without justification" and had an "utter lack of merit," and that simply stated that an award of $ 6,000 would "fairly compensate[ ]" appellee for fees incurred in defending against appellant's position).[5]

*Judgment affirmed in part and vacated and remanded in part. Barnes, P. J., and McFadden, J., concur.*

---

[5] We note that in *Ellis v. Caldwell*, 290 Ga. 336, 339 (2) (a) (720 SE2d 629) (2012), the Georgia Supreme Court determined that the trial court made its attorney fee award under OCGA § 9-15-14 (b) based on the language in the order even though the specific subsection was not cited. But we must assume that the trial court in *Ellis* apparently provided the necessary findings of fact to support that award because the Supreme Court did not address that issue. Here, the trial court neither specified the particular section of the statute nor provided the requisite findings of fact. Accordingly, remand is appropriate.