**WHOLE COURT**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.** **http://www.gaappeals.us/rules/**

**July 2, 2013**

# In the Court of Appeals of Georgia

A13A0161. WILLIAMS et al. v. WARREN et al.

McFADDEN, Judge.

The complaint in this intrafamily lawsuit prayed for cancellation of a deed from a mother to her three adult children. It alleged fraud, undue influence, inadequate consideration, as well as improper recordation. It alleged, in short, that defendants Carolyn Williams and Helen Malone, the grantor's daughters, do not love their mother and that, in the vulnerability of her old age, it was up to her son, plaintiff Victor Warren, to protect her from them. The daughters answered, denying the material allegations of their brother's complaint.

The case settled during trial, but the settlement agreement left open the issue of attorney fees. Tracking the language of OCGA § 9-15-14 (a), the trial court found

that the son was entitled to attorney fees and awarded him $38,303.31. We conclude that no evidence supports the trial court's findings and therefore reverse.

The testimony on which the trial court based his findings – and which appears to have been a major impetus toward settlement – is the last few minutes of the testimony of Helen Malone, one of the daughters.

> **COUNSEL FOR THE SON**: Are you opposed – still opposed to the sale of the property.
>
> **MALONE**: I don't think it's the time to sell the property. Mother is alive. In my mind the property should never be sold as long as mother is living. It's her property. That's the way I want her to think of it. It doesn't matter whose name is on the deed. Three children, it's still her property. I don't even think of it as my property.
>
> **COUNSEL FOR THE SON**: Then why not give it back to her?
>
> **MALONE**: It serves no purpose. It's the same thing.
>
> . . .
>
> **THE COURT**: Ms. Malone, I want to make sure I understand your testimony. Notwithstanding the deed that your mother signed conveying the property to you, your sister, and your brother, you still consider this to be your mother's property?
>
> **MALONE**: Absolutely without a doubt.
>
> **THE COURT**: And it's as if you're holding it in trust for her.
>
> **MALONE**: It is mother's property.

**THE COURT**: So if she were to need the money, how would she access it?

**MALONE**: I don't think she needs the money.

**THE COURT**: I understand. But let's just what if.

**MALONE**: I haven't thought that far ahead.

**THE COURT**: But right now there would be nothing she could do of her own to require that it be sold and used for her benefit.

**MALONE**: I don't know. I have not – have not thought through that.

**THE COURT**: Thank you, ma'am. You can go down.

Shortly after that testimony, the proceedings were suspended so that the parties could negotiate; and they reached an agreement. In that agreement, they acknowledged that their mother had now become legally incapacitated. They agreed to petition the probate court to appoint a conservator, who would "consider the advantages and disadvantages of leaving the deed to the . . . property in the names of [the three siblings] or executing a deed transferring the . . . property back to [their mother]," giving "[p]articular consideration[] . . . [to] the effects of Medicaid relate-back provisions and conservation trust status tax savings." And they agreed that, should the conservator determine it was in the mother's best interests to leave the

3

property in the names of her children, they would hold the property in trust for her benefit.

As noted above, the settlement agreement left open the issue of attorney fees. After a motion, response, and hearing, the trial court entered an order finding that, "the [daughters] were called for cross examination and testified that, notwithstanding the deed, they considered the property to be their mother's property," and that "the [daughters] maintained their position that the deed should not be set aside even though they simultaneously asserted that the property transferred by the deed to the parties herein was still their mother's property." Tracking the language of OCGA § 9-15-14 (a), the trial court concluded that "[t]here was such a complete absence of any justiciable issue of law or fact with respect to the [daughters'] defense in this case [that] they could not have reasonably believed that the court would accept it." We granted the daughters' application for discretionary appeal, and this appeal followed.

1. *The order's failure to specify subsection (a) or (b) of OCGA § 9-15-14.*

The trial court's order awarding attorney fees to the son does not specify the subsection of OCGA § 9-15-14 under which it was made. The daughters argue that this is fatal to the award. Such specificity is normally required.

4

An order awarding attorney fees pursuant to OCGA § 9-15-14 must specifically state whether the award is made under OCGA § 9-15-14 (a) or (b). . . . Specificity in the award is important because the standards of appellate review are different under each subsection: the standard under subsection (a) is the "any evidence" rule; the standard under subsection (b) is abuse of discretion.

(Citations, punctuation and emphasis omitted.) *Fulton County School Dist. v. Hersh*, __ Ga. App. __, __ (2) (__ SE2d __) (Case No. A12A2352, decided March 26, 2013). But here, as noted above, the trial court's findings substantially tracked OCGA § 9-15-14 (a). Consequently, under the specific circumstances of this case, the failure to specify subsection (a) is not fatal to the award. See *Ellis v. Caldwell*, 290 Ga. 336, 339 (2) (a) (720 SE2d 628) (2012) (concluding that trial court made its attorney fee award under OCGA § 9-15-14 (b) based on the language in the order even though the trial court failed to specify the subsection).

2. *Finding of conduct to support the award.*

OCGA § 9-15-14 (a) provides,

In any civil action in any court of record of this state, reasonable and necessary attorney's fees and expenses of litigation shall be awarded to any party against whom another party has asserted a claim, defense, or other position with respect to which there existed such a complete absence of any justiciable issue of law or fact that it could not be

5

reasonably believed that a court would accept the asserted claim, defense, or other position. Attorney's fees and expenses so awarded shall be assessed against the party asserting such claim, defense, or other position, or against that party's attorney, or against both in such manner as is just.

Since the trial court made the award under§ 9-15-14 (a), we apply an any evidence standard of review. *Fulton County School Dist.*, supra, __ Ga. App. at __ (2). "That said, whether attorney fees are required under OCGA § 9-15-14 (a) depends in some cases not so much upon an assessment of what we usually mean when we speak of 'evidence' -- testimony and exhibits and the like -- but upon an assessment of the state of the law at the time a party advanced a legal argument that, another party now contends, forms the basis for an award of attorney fees. Such an assessment of the state of the law, we think, itself presents a question of law, and we usually do not defer to trial courts about pure questions of law." *Gibson Const. Co. v. GAA Acquisitions I*, 314 Ga. App. 674, 676 (725 SE2d 806) (2012) (citation omitted).

The trial court's interpretation of Ms. Malone's testimony is unsustainable under any standard of review. Her testimony was clear. The trial court misconstrued it in a way possible only for a lawyer. When she said that she still considered the subject property her mother's and that conveying it back would make no difference,

6

Ms. Malone was not offering an opinion about the scope of her legal rights. Her testimony – legalistically paraphrased – was that whatever the scope of her legal rights, her exercise of those rights would be constrained by her filial duties.

Moreover even if the deference owed to the trial court as finder of fact requires us to ignore Ms. Malone's clearly-expressed meaning and accept an implicit finding that – as the dissent would have it – the daughters' denials of his allegations that they were preying on their mother was "motivated by the explicitly expressed desire to oppose their brother," the trial court's reasoning nevertheless fails. Nothing in OCGA § 9-15-14 (a) authorizes trial courts to assess attorney fees on the basis of disapproval of a litigant's motives. And although subsection 9-15-14 (b) does refer to actions or defenses "interposed for delay or harassment," this award could not have been sustained on the basis of that subsection either. "The fact that a plaintiff is litigious, that he sues everyone who offends him or has any disagreement with him, should not affect his right to recover what is rightly his. 'No man is bound to forego litigation at the expense of yielding rights apparently well-founded, much less those which prove to be so founded in the end.' *Tift v. Towns*, 63 Ga. 237, 242 (3) [(1879)]." *Ryle v. Sliz*, 162 Ga. App. 868, 869-870 (2) (293 SE2d 451) (1982).

7

The question before us is whether or not, in light of the current state of the law, *Gibson Const. Co.*, supra, 314 Ga. App. at 676, Ms. Malone's testimony can support a finding that she and her sister asserted defenses "with respect to which there existed such a complete absence of any justiciable issue of law or fact that it could not be reasonably believed that a court would accept [them]." OCGA § 9-15-14 (a). It cannot. If her testimony is deemed a legal opinion that the subject deed is invalid, it is – to that extent – inadmissible. *Gage v. Tiffin Motor Homes*, 153 Ga. App. 704, 707 (2) (266 SE2d 345) (1980); see also former OCGA § 24-9-65; OCGA § 24-7-701 (a) (effective January 1, 2013).

Nor did Ms. Malone admit to the factual predicate of any of her brother's claims. She did not admit to any of the elements of a cause of action for fraud. See *Fortson v. Freeman*, 313 Ga. App. 326, 328 (721 SE2d 607) (2011) ("The tort of fraud has five elements: a false representation by the defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by the plaintiff, and damage to the plaintiff.") (citations omitted). Nor did she admit to the elements of undue influence. See *Schaffer v. Fox*, 303 Ga. App. 584, 585 (1) (693 SE2d 852) (2010) ("For undue influence to be sufficient to invalidate a deed, it must amount to deception or force and coercion that operates on the grantor when she is executing the

8

deed so that the grantor is deprived of free agency and the will of another is substituted for that of the grantor.") (citation omitted). Her testimony was at most tangentially related to the issue of inadequate consideration. See OCGA § 23-2-2. And it shed no light at all on the circumstances of recordation of the subject deed.

It is fair to read Ms. Malone's testimony to acknowledge failure to consider the possibility that her mother's best interests might have been better served by a trust, a life estate, or by some other arrangement more sophisticated than the subject deed. And it is regrettable that the parties engaged in extensive, costly litigation before agreeing to an investigation of that possibility. But there is no warrant in OCGA § 9-15-14 for a judicial inquiry into the causes of that regrettable state of affairs.

No evidence supports the trial court's finding that the daughters defended this action without a lawful basis for doing so. Accordingly, the award of attorney fees must be reversed.

*Judgment reversed. Phipps, C. J., Ellington, P.J. and Doyle, P. J., concur. Barnes, P. J., Boggs and Branch, JJ., dissent.*

9

A13A0161. WILLIAMS et al. v. WARREN et al.

Boggs, Judge, dissenting.

I agree with the majority that the trial court's order may be construed as an award of attorney fees under OCGA § 9-15-14 (a). But I believe the record provides some evidence to support the trial court's ruling, and under the applicable standard of review we may not substitute our judgment for that of the trial court. I therefore would affirm.

Under OCGA § 9-15-14 (a), a trial court shall award reasonable and necessary attorney fees where a party has asserted a position that lacked any justiciable issue of law or fact so that it could not be reasonably believed that a court would accept it. "We review a trial court's ruling on an OCGA § 9-15-14 (a) motion for attorney fees under the 'any evidence' standard. If any evidence exists to support the trial court's grant of the motion, we are compelled to affirm." (Citations and punctuation omitted.) *Trotter v. Summerour,* 273 Ga. App. 263, 264 (614 SE2d 887) (2005). In so doing,

we determine whether the claim asserted below either had some factual merit or presented a justiciable issue of law. See *Doster v. Bates*, 266 Ga. App. 194, 196 (596 SE2d 699) (2004).

Here, in contrast to the majority's initial characterization of the appellee's motives, some evidence was presented that the appellants executed a deed transferring their mother's property without the knowledge of Warren, who managed his mother's financial affairs. Concerned about legal implications, including fraudulent transfer and a conservation easement on the land, as well as the fact that his mother received no money from the transfer and had no assets to cover her expenses and needs, Warren asked his sisters to cancel the deed. When they refused he brought suit in April 2009, individually and as the representative of his mother, asserting various grounds but in essence seeking to cancel the deed as a sham.

Although appellants opposed Warren's suit vigorously for a period of over two years, when the case came to trial in October 2011, appellant Helen Malone testified that she believed the property belonged to her mother. Pressed for a reason for the transfer, Malone testified that it was Warren's idea, that she did not believe her mother needed the money (based on her mother's statement at some time in the past that she had "plenty of money"), and that she could see no reason for keeping the

2

property in the children's names. But, in testimony not noted by the majority, she also testified that she did not want to cancel the deed because Warren "is trying to bully us to get his way because that's what he wants." She described at some length appellants' contentious relationship with Warren.

Finally, she testified, "In my mind the property should never be sold as long as mother is living. It's her property. That's the way I want her to think of it. It doesn't matter whose name is on the deed. Three children, it's still her property. I don't even think of it as my property." Asked, "Then why not give it back to her?" she responded, "It serves no purpose. It's the same thing."

At this point, the trial court interjected with a question and the following exchange took place:

> THE COURT: "Ms. Malone, I want to make sure I understand your testimony. Notwithstanding the deed that your mother signed conveying the property to you, your sister, and your brother, you still consider this to be your mother's property?"
> THE WITNESS: "Absolutely without a doubt."
> THE COURT: "And it's as if you're holding it in trust for her."
> THE WITNESS: "It is mother's property."
> THE COURT: "So if she were to need the money, how would she access it?"
> THE WITNESS: "I don't think she needs the money."
> THE COURT: "I understand. But let's just what if."

3

> THE WITNESS: "I haven't thought that far ahead."
> THE COURT: "But right now there would be nothing she could do of her own to require that it be sold and used for her benefit."
> THE WITNESS: "I don't know. I have not – have not thought through that."
> THE COURT: "Thank you, ma'am. You can go down."

This evidence provides ample support for the trial court's conclusion that appellants had not considered and could articulate no factual or legal basis for opposing the cancellation of the deed, but instead were motivated by the explicitly expressed desire to oppose their brother. The motive for appellants' vigorous litigation is not a question of law, as the majority asserts, but a question of fact. Under an appropriate standard of review, this finding of fact is adequately supported by the witness' uncontradicted assertion that she refused to reconvey the property to her mother, even though she saw no reason to keep it in the sisters' names, because her brother was "trying to bully us to get his way."

The majority states that "[t]he trial court's interpretation of Ms. Malone's testimony is unsustainable, under any standard of review" and adds that "[t]he trial court misconstrued it in a way possible only for a lawyer." But the majority's claim that testimony was misconstrued in and of itself demonstrates an inappropriate standard of review. Under an "any evidence" analysis we may not weigh the evidence

4

or substitute our construction of a witness' testimony for that of the trial court. I prefer to allow our trial judges, who see the witnesses and hear their testimony first-hand, to determine whether a witness was "constrained by her filial duties," as opined by the majority. The outcome of an appellate review, particularly under the "any evidence" standard, should not rest upon an appellate analysis, on a cold record, of a witness' motivation for testimony.

Under the proper standard of review, some evidence supports the trial court's finding that appellants' defense of the suit lacked any legal or factual basis, and for this reason I would affirm.

I am authorized to state that Presiding Judge Barnes and Judge Branch join in this dissent.