A95A2092. BARRON v. POYTHRESS et al.
(466 SE2d 665)

BEASLEY, Chief Judge.

We granted Barron's application for discretionary review of the denial of her claim for unemployment benefits, after she was discharged from her job as a photocopy clerk with NationsBank. She appealed and was heard by an administrative hearing officer, who determined she was disqualified from benefits under OCGA § 34-8-194

(2) (A). The Department of Labor's board of review adopted the hearing officer's decision and affirmed, and the board's decision was affirmed by the superior court.

When Barron was hired, she told her employer she could not work overtime due to child care and safety concerns. A little over a year later, on November 26, 1993, the employer instituted a new policy that all photocopying jobs would be completed the same day submitted, and that all photocopy workers would be required to work whatever overtime was necessary to implement that policy. Barron informed her supervisor that this created a problem in that her child care provider would charge $20 an hour past 6:00 p.m. and that the area where her child care provider was located was unsafe for a woman traveling alone by public transportation at night. Her supervisor referred the matter to the personnel department.

The personnel manager's first action was to inform Barron of a child care subsidy program "so she could basically be able to work this overtime and have her kids in a better situation." She also encouraged Barron to find another position with the bank that did not require overtime and informed her that she would have until January 17 to do so. That period was later extended to January 31, and Barron continued to work in her photocopy clerk position while pursuing both options. None of her interviews resulted in another position, but before the deadline she was able to make child care arrangements that allowed her to work the required overtime. She was then told she could not continue in her job because she had been replaced, and her employment was terminated on January 31.

"Under [OCGA § 34-8-194 (2) (A)], an individual may be disqualified for unemployment compensation benefits where the individual has been discharged 'for failure to obey orders, rules, or instructions or for failure to discharge the duties for which he was employed . . .' Before such disqualification is appropriate, the employer must show that the discharge was caused by the deliberate, conscious fault of the claimant. [Cits.]" *Tanner v. Golden*, 189 Ga. App. 894, 895 (377 SE2d 875) (1989). This is in keeping with the "strong public policy favoring payment of unemployment benefits to persons unemployed through no *fault* of their own. OCGA § 34-8-2." *Millen v. Caldwell*, 253 Ga. 112, 113 (317 SE2d 818) (1984). Disqualification is an exception to the statutory scheme for unemployment benefits and the employer must show by a preponderance of the evidence that disqualification is appropriate. Id. at 113, 115; *Glover v. Scott*, 210 Ga. App. 25, 26 (435 SE2d 250) (1993).

The hearing officer found that Barron was "discharged due to being unable to work the required hours of the department" and that she "was separated for failure to work the required hours." Consequently, the hearing officer concluded that under OCGA § 34-8-194

(2) (A) the termination was "due to fault assignable to the claimant and disqualification [was] required." Factual determinations must be affirmed if there is any evidence to support them. OCGA § 34-8-223 (b); *TNS Mills v. Russell*, 213 Ga. App. 107 (443 SE2d 658) (1994). Whether there is fault assignable to claimant, which is a legal requirement for disqualification, often requires a legal conclusion. See *Holstein v. North Chem. Co.*, 194 Ga. App. 546, 548 (3) (390 SE2d 910) (1990). The agency's decision is reversible if there is error in a category listed in OCGA § 50-13-19 (h) (1) through (6).

There is no evidence to support the conclusion that termination was Barron's fault. A determination of a disqualifying fault must be made in the context of whether the employee would reasonably expect, under all the circumstances of employment, that sanction would result from a violation. *Millen*, supra at 115; accord Ga. Comp. Rules & Regulations 300-2-1-.01 (9) (c).

It is uncontroverted that Barron was terminated solely because of an inability to work overtime. It is also uncontroverted that, before her termination, she informed the bank that she could indeed work overtime. She had been given a period of time in which to secure another position at the bank while still holding her photocopy clerk position or work out arrangements for child care, which the personnel office attempted to help her cure. She was unable to use the child care assistance the bank offered because it would leave her with too much to pay from her own funds, but she independently sought and found a different child care solution that enabled her to work overtime. When she had resolved the problem presented by the employer's new policy, she was told she would be terminated anyway because her position had been filled by someone else. There is no evidence Barron was ever informed she would be terminated even if, before the deadline, she became able to work the overtime. "If an employer . . . wishes to be arbitrary about such matters, Georgia law allows it nearly free rein as far as the firing is concerned, but not as far as payment of unemployment compensation benefits to the ex-employee is concerned." *Millen*, supra at 114.

It cannot be said that the bank showed there was a reasonable expectation of termination when Barron cured the problem. Therefore, fault for her termination is not assignable to her. As the bank did not carry its burden of showing that Barron came within the disqualification exception, she is entitled under the law to unemployment compensation and the superior court erred in affirming the denial of benefits. See *Glover*, supra at 26-27. OCGA § 50-13-19 (h) (5).

*Judgment reversed. Pope, P. J., and Ruffin, J., concur.*

DECIDED JANUARY 4, 1996.

*Anne E. Bunton*, for appellant.

*Michael J. Bowers, Attorney General, Kimberly B. Lewis, Assistant Attorney General, Mary U. Jones*, for appellees.