### A11A1451. McCAULEY v. THURMOND.
(716 SE2d 733)

MILLER, Presiding Judge.

When Toni McCauley ("McCauley") was discharged from her position as a support coordinator for Professional Case Management Services of America ("PCSA"), she applied for unemployment compensation benefits. The Georgia Department of Labor found that McCauley was not qualified to receive unemployment compensation benefits, a determination that was initially reached by a claims examiner and thereafter affirmed by both an administrative hearing officer ("AHO") and the board of review.[1] In an administrative appeal, the superior court affirmed the Department's findings. We granted McCauley's application for discretionary review, and she appeals the superior court's order. Because there was evidence to support the Department's decision to disqualify McCauley from unemployment compensation benefits, we affirm.

> In considering whether the administrative tribunal properly found that [McCauley] was not entitled to receive unemployment benefits, the trial court, as well as this court, must affirm if there is any evidence to support that ruling. And we will uphold the [D]epartment's factual findings if there is any evidence to support them.

(Citations and punctuation omitted.) *MCG Health v. Whitfield*, 302 Ga. App. 408 (690 SE2d 659) (2010). "When this Court reviews a superior court's order in an administrative proceeding, our duty is not to review whether the record supports the superior court's decision but whether the record supports the final decision of the administrative agency." (Citation and punctuation omitted.) *Davane v. Thurmond*, 300 Ga. App. 474, 475 (685 SE2d 446) (2009).

The relevant facts[2] are that McCauley worked as a support coordinator for PCSA from May 2008 through December 10, 2009.

---

[1] The claims examiner, the AHO, and the board of review are hereinafter collectively referred to as the "Department."

[2] Neither the Department nor PCSA filed a responsive brief in this appeal. Accordingly, they are deemed to have admitted the statement of facts as set out by McCauley in her brief, to the extent such facts are supported by the record. See Court of Appeals Rule 25 (b) (1); *Payless Car Rental System v. Elkik*, 306 Ga. App. 389, 390, n. 4 (702 SE2d 697) (2010).

PCSA is an agency that provides support coordination to individuals with developmental disabilities receiving Medicaid from the State of Georgia, and as a support coordinator, McCauley was responsible for managing a caseload consisting of 40 or more such individuals. McCauley's job responsibilities required her to meet with each of these individuals on a monthly basis, as well as conduct support needs assessments and individual service plans with the individuals, their families, and community support persons. McCauley was also required to enter support notes for each of her cases. Specifically, notes for one-half of her caseload were due by the 15th day of each month and notes for the other half were due by the 25th day of each month.

On November 23, 2009, McCauley learned that she had tested positive for influenza, and that she would have to remain in quarantine for five days. On the same day, McCauley e-mailed both her direct supervisor and the regional manager,[3] in which she informed them that she was ill, was to be quarantined, was traveling to Michigan for the Thanksgiving holiday, and would report back to work on November 29, 2009.[4]

The regional manager responded to McCauley's e-mail on November 23, 2009, and requested that McCauley provide medical documentation regarding her diagnosis and quarantine, as well as explain why she was going to Michigan if she had to be quarantined[5] and why she would not be able to complete her work by the November 25, 2009 deadline. On November 27, 2009, after receiving no response from McCauley, the regional manager e-mailed McCauley again; based on McCauley's previous indication that she would be returning to work on November 29, 2009, the regional manager's e-mail requested that McCauley come in for a meeting on November 30, 2009, to discuss her condition and workload. McCauley nevertheless failed to respond to the regional manager's request for a meeting. McCauley did, however, send an e-mail to her direct supervisor on November 28, 2009, in which McCauley stated that she would be going to the hospital and provided a schedule of her pending work assignments over the next couple of weeks.[6] When the

---

[3] The regional manager was responsible for managing all supervisors and staff, including McCauley and McCauley's direct supervisor. The regional manager was the only representative who testified on behalf of PCSA at the hearing before the AHO.

[4] A doctor's note in the record indicates that McCauley could return to work on November 29, 2009.

[5] At the hearing before the AHO, McCauley testified that she did not in fact travel to Michigan.

[6] The evidence indicates that McCauley was referred to an emergency room on November 30, 2009, for menorrhagia and severe anemia. The next day, December 1, 2009, McCauley received a blood transfusion and was discharged from the hospital.

direct supervisor notified the regional manager of McCauley's e-mail, the regional manager e-mailed McCauley for a third time on November 28, 2009, in which she reiterated her requests for medical documentation[7] and further explanation or detail regarding McCauley's purported holiday trip to Michigan and inability to complete her work.

McCauley neither responded to the regional manager's third e-mail, nor came into the office for the November 30, 2009 meeting. The regional manager thereafter scheduled two additional meetings that McCauley likewise failed to attend (one on December 7, 2009, and the other on December 10, 2009).[8] According to the regional manager, she did not receive an e-mail from McCauley until December 10, 2009, at which time McCauley stated she was staying home and would not be in the office to meet with the regional manager. In the regional manager's response to McCauley, she stated:

> This is the third meeting you have cancelled with me. I don't understand why, but I thank you for contacting me because the last two times I did not hear from you. Please understand that my request for meetings have been mandatory. Also I need you to provide the [individual service plan] info for D. H[.] His [individual service plan] has been past due.

McCauley's reply, in relevant part, read, "Let me be clear. My health is the dictator of my actions these days. The only 'mandatory' meetings for me currently are meetings with my doctor. I apologize for assuming that this was automatically understood."

McCauley was ultimately terminated on December 10, 2009, for the following reasons: failing to attend three mandatory meetings requested by regional manager, not entering her case support notes by the November 25, 2009 deadline, failing to timely submit individual service plans, not returning regional manager's e-mails within 48 hours, and entering partially blank support notes into the PCSA

---

[7] McCauley testified that she faxed her medical documentation to the office in which she worked; she conceded, however, that it "wouldn't be the first time that something was faxed over there and . . . didn't get to the proper party." The regional manager denied that she or anyone else at that office had ever received a fax from McCauley. McCauley also indicated that she had intended to personally deliver a hard copy of her medical documentation, but that she had not been able to make it to the office.

[8] The evidence shows that PCSA issued McCauley a disciplinary action for her noncompliance with PCSA protocol and policies by failing to timely submit individual service plans, failing to secure a replacement/make arrangements to facilitate previously scheduled individual service plan meetings, and failing to respond to the regional manager's e-mails within 48 hours. According to the regional manager, however, McCauley was never presented with this disciplinary action since she failed to ever come in for a meeting.

computer system.

McCauley filed a claim for unemployment compensation benefits, which was initially denied by the claims examiner. McCauley appealed the claims examiner's denial. Following a hearing, the AHO affirmed the decision of the claims examiner; the board of review subsequently adopted the AHO's findings and conclusions. After McCauley filed a petition for judicial review, the superior court found that there was some evidence to support the AHO's findings of fact and affirmed the board of review's decision. On her appeal of the superior court's order, McCauley contends that she was entitled to receive unemployment compensation benefits.

"Under OCGA § 34-8-194 (2) (A), an individual may be disqualified from receiving unemployment compensation benefits when he or she has been discharged for failure to obey orders, rules, or instructions. . . ." (Punctuation omitted.) *MCG Health*, supra, 302 Ga. App. at 409. "However, disqualification [under OCGA § 34-8-194 (2) (A)] is not appropriate unless the employer shows the discharge was caused by the deliberate, conscious fault of the claimant." (Citation and punctuation omitted.) *Davane*, supra, 300 Ga. App. at 476. "Disqualification is an exception to the statutory scheme for unemployment benefits and the employer must show by a preponderance of the evidence that disqualification is appropriate." (Citations and punctuation omitted.) *MCG Health*, supra, 302 Ga. App. at 409.

Here, both the Department and the superior court determined that McCauley was disqualified from receiving unemployment compensation benefits because her discharge was due to her own fault. Specifically, the initial claims examiner found that McCauley had been "fired for not following rules, orders, or the instructions of [her] employer when [she] failed to report for meetings to discuss [her] job performance." The AHO agreed, finding that McCauley was "considered to be at fault in causing the discharge," because she failed to submit requested medical documentation to the regional manager, she failed to meet her November 25, 2009 work deadline, and she missed three mandatory meetings with the regional manager to discuss her condition and workload.

The aforementioned record evidence supports the Department's finding of fault. "A determination of a disqualifying fault must be made in the context of whether the employee would reasonably expect, under all the circumstances of employment, that sanction would result from a violation." (Citation omitted.) *Barron v. Poythress*, 219 Ga. App. 775, 777 (466 SE2d 665) (1996). McCauley should have been aware that failing to meet work deadlines, entering partially blank supporting case notes, and ignoring her regional manager's direct communications and orders subjected her to termi-

nation. See *Jamal v. Thurmond*, 263 Ga. App. 320, 321 (1) (587 SE2d 809) (2003) ("[T]here was evidence sufficient for the factfinder's determination that [the claimant] intended not to complete the assignment and that he should have been aware that such a refusal subjected him to termination.") (punctuation omitted).

McCauley nevertheless argues on appeal that the superior court erred by failing to apply OCGA § 34-8-194 (2) (B) (ii) and (iii) to the Department's findings. We disagree.

Pursuant to OCGA § 34-8-194 (2) (B) (ii), an individual shall not be disqualified for benefits under OCGA § 34-8-194 (2) (A) if the Department determines that "[t]he individual did not intentionally fail or consciously neglect to perform his or her job duties. . . ." Although McCauley claims that she was not shown to have "committed any offense intentionally or as a result of conscious neglect," the record evidence shows otherwise. Notably, the evidence shows that McCauley was well aware that her support notes for one-half of her caseload were due to be entered by November 25, 2009. Despite the fact that McCauley was able to perform her job duties up until she was diagnosed with influenza on November 23, 2009, the evidence shows that she had still failed to complete her support notes for over 50 percent of her caseload by the November 25, 2009 deadline. She likewise failed to timely submit individual service plans, which the State requires in order for individuals to continue receiving Medicaid. McCauley also entered partially blank supporting notes into the PCSA computer system, which, according to the regional manager, could have given rise to Medicaid fraud. Even assuming that McCauley's illness interfered with her ability to complete the foregoing work assignments, her illness did not excuse her from at least responding to her regional manager's direct requests for a mandatory meeting, or from timely returning her regional manager's multiple e-mails that requested details and documentation regarding McCauley's condition. Such evidence supports the finding that McCauley, at the very least, consciously neglected to perform her duties.

McCauley's argument regarding the application of OCGA § 34-8-194 (2) (B) (iii) is equally unavailing. Under that subsection, an individual shall not be disqualified for benefits under OCGA § 34-8-194 (2) (A) if the Department pertinently determines that "[t]he *discharge occurred because of absenteeism* and the absences were caused by illness of the claimant or a family member, unless the claimant has without justification failed to notify the employer." (Emphasis supplied.) OCGA § 34-8-194 (2) (B) (iii). Per its plain language, OCGA § 34-8-194 (2) (B) (iii) applies only where the claimant's discharge occurred because of absenteeism. The fact that McCauley was absent due to her influenza diagnosis and her

subsequent blood transfusion does not constitute evidence that McCauley was in fact discharged for those absences, for even McCauley herself, in completing a Department form upon discharge, indicated that she had not been discharged due to being absent or late to work. Cf. *Glover v. Scott*, 210 Ga. App. 25, 26 (435 SE2d 250) (1993) ("The fact that [the claimant] had other attendance infractions and had been warned does not constitute evidence in the facts of this case that she was terminated for those other infractions, for it is undisputed that she was not terminated because of those other infractions. She was terminated only after, and because, she was absent from work for two hours . . . to attend juvenile court proceedings with her son."). As outlined above, the record evidence instead shows that McCauley was specifically discharged not only for failing to meet her work deadlines and entering partially blank supporting case notes, but also for unjustifiably ignoring her regional manager's multiple e-mails requesting a mandatory meeting and details and documentation regarding McCauley's condition and workload.

In sum, because there was evidence to support the Department's decision to disqualify McCauley from receiving unemployment compensation benefits, there was no error in the superior court's affirmance of that decision. See *Jamal*, supra, 263 Ga. App. at 322 (2).

*Judgment affirmed. Ellington, C. J., and Doyle, J., concur.*

DECIDED SEPTEMBER 8, 2011.

*Mary I. Dickerson*, for appellant.
*Samuel S. Olens, Attorney General, Kimberly B. Lewis, Assistant Attorney General*, for appellee.