**THIRD DIVISION
ANDREWS, P. J.,
DILLARD and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**June 12, 2013**

# In the Court of Appeals of Georgia

A13A0552. WILLIAMS v. BUTLER et al.

DILLARD, Judge.

Penny Williams was terminated from her job at a Phillips-Van Heusen Corporation ("PVH") distribution center and applied for unemployment-compensation benefits, which were initially awarded. Following PVH's challenge, an administrative-hearing officer ("AHO") reversed the award, and both the Department of Labor Board of Review (the "Board") and the Superior Court of Cobb County affirmed that decision. Williams now appeals, arguing that the Board improperly based its decision on hearsay evidence and that it erred in finding that she was at fault in causing her termination. For the reasons set forth *infra*, we reverse.

The record shows that Williams initially worked for PVH from 2006 through December 2009, when she was terminated for fighting with a co-worker. But

following an agreement reached between PVH and Williams's union, she was rehired and returned to work on February 15, 2010. And as a condition of her rehiring, PVH informed Williams that she was on probation for the next 60 days and that any written warning ("write-up") for a violation of company policy during that time period would result in termination of her employment.

Upon being rehired, Williams was assigned to an "order picking" position in PVH's distribution center. And although she had worked in a similar position when she was first hired by PVH in 2006, Williams most immediate position—and one that she held for a significant period of time prior to her December discharge—was with the company's shipping department. As a result, her new position required that she undergo specialized training for picking orders in a specific area of the distribution center.

Williams received her training from February 15 through February 17, 2010, but after she completed same, she was assigned to work in a different picking area, where apparently she found the requirements to be somewhat more complex. Consequently, over the course of the next two weeks, she was unable to keep her order-picking error rate under the 2.5 percent threshold mandated by company policy. And at some point during this time period, Williams informed one of the union-shop

stewards that she was having difficulty performing her job, but she did not inform her supervisors. Shortly thereafter, on March 3, 2010, Williams was "written up" for exceeding the error-rate threshold for picking orders, and her employment was terminated.

Williams then applied for unemployment-compensation benefits, which were granted on April 2, 2010. PVH challenged this award, and on May 18, 2010, an AHO held a telephonic hearing on the matter, during which only Williams and a PVH human-resource manager testified. One day later, the AHO reversed the benefits award, finding that Williams was ineligible because she (1) had satisfactorily performed the job of picking orders in the past, (2) had received training for her position after being rehired, (3) did not inform a supervisor that she was having difficulties performing the job, and (4) was aware that any written warning during her 60-day probation period would result in termination of her employment.

Williams appealed to the Board of Review, but the Board adopted the AHO's decision. Shortly thereafter, she filed a petition for judicial review in the Superior Court of Cobb County. Both parties filed briefs, and a hearing was held on the matter but was not transcribed. On July 31, 2012, the superior court entered an order

3

affirming the Board's decision. Williams then filed an application for discretionary appeal, which we granted. This appeal follows.

At the outset, we note that when a court reviews a decision of the DOL Board of Review that an employee is disqualified for unemployment-compensation benefits, "the factual findings of the Board are conclusive to the extent that they are supported by competent evidence, and the court must affirm the decision of the Board if it is supported by any competent evidence."[1] Furthermore, this Court's duty is not to "review whether the record supports the superior court's decision but whether the record supports the initial decision of the administrative agency."[2] And on appeal, we will similarly uphold the Board's factual findings if there is any evidence to support them.[3] With these guiding principles in mind, we turn now to Williams's specific claims of error.

1. Williams contends that the Board erred in denying her claim for unemployment-compensation benefits on the ground that she was at fault in causing

---

[1] *Teal v. Thurmond*, 310 Ga. App. 312, 313 (713 SE2d 436) (2011) (citation omitted).

[2] *Solinet v. Johnson*, 280 Ga. App. 227, 228 (633 SE2d 626) (2006) (punctuation omitted).

[3] *Id.*

4

the termination of her employment. We agree and, therefore, reverse the judgments below.

Under OCGA § 34-8-194 (2) (A), no unemployment benefits are due to an individual who is fired "for failure to obey orders, rules, or instructions or for failure to discharge the duties for which the individual was employed as determined by the Commissioner according to the circumstances in the case."[4] But OCGA § 34-8-194 (2) (B) provides in part that

> [a]n individual shall not be disqualified for benefits under subparagraph (A) of this paragraph if, based on the rules and regulations promulgated by the Commissioner, the Commissioner determines . . . [t]he individual made a good faith effort to perform the duties for which hired but was simply unable to do so . . . [t]he individual did not intentionally fail or consciously neglect to perform his or her job duties.[5]

This is consistent with the fact that "Georgia, like the other states of the Union, has a strong public policy favoring payment of unemployment benefits to persons unemployed through no *fault* of their own."[6]

---

[4] *See* OCGA § 34-8-194 (2) (A).

[5] *See* OCGA § 34-8-194 (2) (B) (i), (ii).

[6] *Millen v. Caldwell*, 253 Ga. 112, 113 (317 SE2d 818) (1984); *see* OCGA § 34-8-2 (As a guide to the interpretation and application of this chapter, the public

5

Consequently, an employer claiming that a former employee is disqualified from receiving unemployment benefits "bears the burden of proving the grounds for disqualification by a preponderance of the evidence."[7] Indeed, disqualification is not appropriate unless "the employer shows the discharge was caused by the deliberate, conscious fault of the [employee]."[8] And as the Supreme Court of Georgia has held "[f]ault means more than mere failure to perform one's work duties."[9] As such, an employee who does not perform her work assignment adequately because "she is *unable* to do so (*i.e.,* not through fault or conscious neglect) cannot be penalized under OCGA § 34-8-[194 (2) (A)]."[10] Furthermore, although we are bound to apply the any evidence standard in these cases, "whether there is fault assignable to a

---

policy of this state is declared to be as follows: economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this state . . . .").

[7] *Teal*, 310 Ga. App. at 313.

[8] *Davane v. Thurmond*, 300 Ga. App. 474, 476 (685 SE2d 446) (2009) (punctuation omitted).

[9] *Millen*, 253 Ga. at 113 (punctuation omitted).

[10] *Id*.

6

claimant, which is a legal requirement for disqualification, often requires a legal conclusion."[11]

And here, it is undisputed that Williams was having difficulty satisfactorily performing her job—*i.e.*, picking orders. What *is* in dispute is whether the problems resulting from Williams's job performance were due to her inability to perform her job duties proficiently or were instead caused by a conscious neglect on her part, which would justify disqualifying her from unemployment benefits under OCGA § 34-8-194 (2) (A).

Having carefully examined the appellate record, we conclude that there is no evidence contradicting Williams's contention that her order-picking errors occurred despite her best efforts to perform her job in a satisfactory manner. In fact, her unequivocal testimony was that she tried to do her best in this new position. Moreover, PVH provided no evidence that Williams's errors were the result of dishonesty, deliberate malfeasance, carelessness, or negligence.[12] Thus, PVH failed

---

[11] *Fulton County School Dist. v. Hersh*, ___ Ga. App. ___, Slip op. at 10 (1) (Case No. A12A2352; decided March 26, 2013).

[12] *See Lamb v. Tanner*, 178 Ga. App. 740, 741 (344 SE2d 534) (1986) (holding that employee "fault" required to preclude benefits means more than mere failure to perform duties and requires deliberate malfeasance or negligence).

to provide *any* evidence that Williams was at fault for her discharge as contemplated by the relevant statutory provisions and accompanying case law.[13]

Nevertheless, PVH argues that the Board's decision should be affirmed because Williams previously picked orders when she was first employed at the company and because she knew she would be discharged if she received any write-ups. We disagree. The fact that Williams previously picked orders does not in and of itself constitute evidence that her picking error rate was the result of anything other than a mere inability to perform the job—particularly when one considers Williams's uncontradicted testimony that she was assigned to an area that was different from the one in which she was actually trained.[14] Moreover, PVH fails to persuasively explain how Williams's awareness that she would be discharged for receiving any write-ups equates to her picking error rate being a product of deliberate or conscious fault on her part. And PVH's extension of this argument—*i.e.*, that the termination of

---

[13] *See id.* (reversing denial of unemployment benefits because evidence showed that cashier's violation of employer's policy prohibiting overages or shortages in register resulted in cashier's inability to perform her job duties proficiently rather than from conscious neglect).

[14] *See id.* (holding that the fact that cashier had been employed in that position for several years did not constitute evidence that she intentionally failed to comply with the employer's policy).

Williams's employment was more accurately a result of her receiving a write-up rather than her picking errors—merely offers a distinction without a difference. Indeed, the logic of this argument is belied by simply asking whether Williams would have received the write-up if she had adequately performed her picking assignment. The answer, of course, is no. Suffice it to say, the dictates of the stipulation that resulted in Williams being terminated cannot be used to circumvent the statutory provisions governing disqualification from unemployment benefits.[15] Accordingly, we reverse the judgments below and remand this case to the Board for a decision consistent with this opinion.

2. Given our holding in Division 1, *supra*, we need not address Williams's contention that the AHO and Board's decisions denying her unemployment benefits improperly relied on hearsay evidence.

*Judgment reversed. Andrews, P. J., and McMillian, J., concur.*

---

[15] *Cf*. OCGA § 34-8-250 ("Any agreement by an individual to waive, release, or commute his or her rights to benefits or any other rights under this chapter shall be void. . . .")