**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and BRANCH, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**September 17, 2013**

# In the Court of Appeals of Georgia

A13A0977. BARNETT v. GEORGIA DEPARTMENT OF LABOR  JE-048
   et al.

ELLINGTON, Presiding Judge.

After being fired from his job at Sheila J. Butler and Company, Inc. ("the employer"), Danny Barnett applied for unemployment compensation benefits under Georgia's Employment Security Law, OCGA § 34-8-1 et seq. The employer challenged Barnett's application for unemployment benefits, contending that he was fired for violating orders, rules, or instructions, or for failing to perform duties of his employment, and was thus disqualified for benefits under OCGA § 34-8-194 (2) (A). A Department of Labor claims examiner determined that Barnett was qualified to receive unemployment benefits, and the employer appealed. After a hearing, an administrative hearing officer determined that Barnett was disqualified for benefits,

and this decision was affirmed by the Department's Board of Review (the "Board") and then by the Superior Court of Carroll County. Pursuant to a granted application for discretionary appeal, Barnett appeals, contending that there was no evidence that he knew or should have known that the conduct his employer found objectionable could have resulted in termination and, therefore, that the Board erred in finding that his termination was caused by his conscious, deliberate fault.[1] For the reasons explained below, we reverse and remand.

Under OCGA § 50-13-19, which governs judicial review of contested administrative decisions, "[j]udicial review of an administrative decision requires the court to determine [whether] the findings of fact are supported by any evidence and to examine the soundness of the conclusions of law that are based upon the findings of fact." (Citation and punctuation omitted.) *Pruitt Corp. v. Ga. Dept. of Community Health*, 284 Ga. 158, 160 (3) (664 SE2d 223) (2008). The reviewing court "accepts the [agency's] findings of fact if there is any evidence to support the findings, [but] the court may reverse or modify [an] agency decision . . . upon a determination that the agency's application of the law to the facts is erroneous." (Citations and

[1] Both the Commissioner of the Department of Labor and the employer opted not to participate in Barnett's appeal to this Court.

2

punctuation omitted.) Id. at 161 (3).[2] Thus, in reviewing a decision of the Board that

an employee is disqualified from receiving unemployment compensation benefits, the

reviewing court must affirm the decision of the Board, in the absence of legal error,

if the Board's decision is supported by any competent evidence in the administrative

record. *Williams v. Butler*, _ Ga. App. _ (Case No. A13A0552, decided June 12,

2013); see also *N. Fulton Regional Hosp. v. Pearce-Williams*, 312 Ga. App. 388, 390

(718 SE2d 583) (2011) (physical precedent only); *Trent Tube v. Hurston*, 261 Ga.

App. 525 (583 SE2d 198) (2003). However, the Board's application of the law to the

facts is reviewed de novo. *Pruitt Corp. v. Ga. Dept. of Community Health*, 284 Ga.

---

[2] A court reviewing an agency decision
shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
OCGA § 50-13-19 (h).

3

at 161 (3); *N. Fulton Regional Hosp. v. Pearce-Williams*, 312 Ga. App. at 390; *Trent Tube v. Hurston*, 261 Ga. App. at 525.

Because "Georgia, like the other states of the Union, has a strong public policy favoring payment of unemployment benefits to persons unemployed through no fault of their own[,] . . . [t]he burden is on the employer urging [a] disqualification for benefits to show by a preponderance of evidence that [an] applicant for compensation comes within the exception" claimed by the employer. (Citation, punctuation, and emphasis omitted.) *Millen v. Caldwell*, 253 Ga. 112, 113 (317 SE2d 818) (1984). "Indeed, disqualification is not appropriate unless the employer shows the discharge was caused by the deliberate, conscious fault of the employee." (Punctuation and footnotes omitted.) *Williams v. Butler*, _ Ga. App. at _. See also *McCauley v. Thurmond*, 311 Ga. App. 636, 639 (716 SE2d 733) (2011) ("Disqualification is an exception to the statutory scheme for unemployment benefits[,] and the employer must show by a preponderance of the evidence that disqualification is appropriate.") (citation and punctuation omitted).

In this case, the employer claimed that Barnett came within the exception set out in OCGA § 34-8-194 (2) (A), under which no unemployment benefits are due to

an individual who is fired for failing to obey the employer's rules.[3] The Board adopted the findings of the hearing officer, who found that Barnett "used insubordinate language" in a document he submitted to Sheila Butler, the employer's president and his supervisor, and that "a tone of disrespect" in that document was "violative of a reasonable standard of conduct." The Board adopted the hearing officer's conclusion that "[w]hen an employee violates a standard of conduct, it is the same as violating a rule. Therefore, [Barnett] is at fault in his discharge and a disqualification is required."

As the decision of the hearing officer implies, the record contains no evidence that the employer had issued any formal order, rule, or instruction forbidding the use of insubordinate language or a tone of disrespect, nor any evidence that the employer made refraining from such conduct an express duty of Barnett's employment. An employee cannot be disqualified for benefits, however, if

---

[3] An individual shall be disqualified for unemployment compensation benefits after the individual has been discharged or suspended from work . . . for failure to obey orders, rules, or instructions or for failure to discharge the duties for which the individual was employed as determined by the Commissioner according to the circumstances in the case. . . . Notwithstanding the foregoing, in the Commissioner's determination the burden of proof of just discharge or suspension for cause as set forth shall be on the employer and the presumption shall be with the employee[.] OCGA § 34-8-194 (2) (A).

5

[t]he discharge occurred as a violation of the employer's rule of which the claimant was not informed by having been made aware thereof by the employer or through common knowledge. Consistency of prior enforcement shall be taken into account as to the reasonableness or existence of the rule and such rule must be lawful and reasonably related to the job environment and job performance[.]

OCGA § 34-8-194 (2) (B) (iv). Furthermore, regulations for administering the Employment Security Law specify that, in showing fault, the employer has the burden of proving that the employee knew or should have known that the violation of the rule, order, or instruction could have resulted in termination. See Ga. Comp. R. & Regs. r. 300-2-1-.01 (9) (c)[4]; *Davane v. Thurmond*, 300 Ga. App. 474, 477 (685 SE2d

---

[4] "Fault" is the failure to follow rules, orders or instructions, or failure to discharge the duties for which the claimant was employed. Fault which is of a disqualifying nature cannot be a technical failing, a minor mistake or the mere inability to do the job. Rather, a breach of duty to constitute "fault" must be such as length of service, nature of duties, prior warnings, equal enforcement of all progressive discipline programs and any other factors which might be used to establish reasonable expectations that the discharge was imminent. The claimant must have been aware that in a discharge which resulted from the violation of the rule, the violation would likely result in termination. In the case of a discharge due to a violation of an employer's rule, order of instruction, an employer has the burden of proving that the claimant knew or should have known that the violation of the rule, order or instruction could have

6

446) (2009); *Barron v. Poythress*, 219 Ga. App. 775, 777 (466 SE2d 665) (1996). Thus, "determination of a disqualifying fault must be made in the context of whether the employee would reasonably expect, under all the circumstances of employment, that sanction would result from a violation." (Citation omitted.) *Davane v. Thurmond*, 300 Ga. App. at 477. It follows that in this case, where the alleged disqualification was Barnett's violation on an unstated standard of reasonable conduct, the employer bore the burden of proving that Barnett knew or should have known that the terminology and tone he used in the document he submitted could result in his termination.

Viewed in the light favorable to Barnett as the employee,[5] the evidence before the hearing officer showed the following. The employer is a health insurance broker that employed Barnett as its large group case manager from June 2, 2008, through January 20, 2012. In January 2012, Sheila Butler was restructuring compensation agency-wide; she informed Barnett that, instead of receiving a traditional salary, his

---

resulted in termination.
Ga. Comp. R. & Regs. r. 300-2-1-.01 (9) (c).

[5] OCGA § 34-8-194 (2) (A) (For disqualification based on the alleged violation of orders, rules, or instructions, or for failure to perform work duties, "the presumption shall be with the employee[.]").

7

team, which included his wife, would all share in a percentage of commissions earned on work assigned to the team.

Barnett was dissatisfied with this new compensation structure, which he interpreted as being made to pay his wife's salary out of his own compensation. On January 17, 2012, he submitted a counterproposal by e-mail, in which he described the percentage increase in his and his wife's compensation from 2011 to 2012 as "intended to be degrading in nature" and stated that he and his wife appreciated receiving compensation that was "appropriate in structure and not contemptuous." Barnett proposed a different compensation agreement and stated that, if Butler agreed to transfer to his wife sole responsibility, as well as all of the income, for the work that he and his wife had formerly shared, and agreed to execute an employment agreement with his wife, then he would tender his resignation. In the proposal, Barnett stated that he expected the proposal to bring Butler "tremendous joy" since she felt that he was a "thorn in [her] flesh."

Contrary to Barnett's prediction, Butler was offended, wondering "what right does an employee [have] to tell [her] what [she is] going to pay [her] employees and [to say that,] . . . if [the employee's] demand is met, . . . [he would] resign." Three days later, Butler called Barnett into her office and handed him a written separation

8

notice. In a notice to the Department, Butler gave as the reason for Barnett's termination, "unable to negotiate reasonable terms for [further employment.]" When asked to "[e]xplain the policy, order, rule or instruction the employee failed to follow," Butler wrote in, "N/A."

At the hearing on the employer's appeal of the claims examiner's decision, Butler described her interaction with Barnett in the days immediately preceding his termination as a "typical confrontation that took place within our agency any time things like this were discussed that he did not agree with." Butler also testified that, a few weeks before she fired Barnett, he had removed all of his personal belongings from his office and insisted on communicating with her only via e-mail. According to Butler, in response to Barnett's suggestion that they communicate only in writing, she went into his office, threw a printout of his e-mail on his desk, and said to him, "I cannot work like this anymore." After that, Barnett did not speak to Butler for four days.[6] Butler testified that she never advised Barnett that he was in jeopardy of losing

---

[6] According to Butler, such outbreaks of silence "happen[ed] a lot." Barnett also removed his personal belongings from his office and offered to resign on other occasions, so that Butler expected him to quit at some point. **There are various emails contained in the record that reflect a tumultuous atmosphere in the workplace, with conflicts among Butler, Barnett, and other employees alternating with apologies and attempts to interact calmly.**

his job except by telling him, on January 4, 2012, "I cannot work like this anymore." She also testified that "in generosity" she paid Barnett two weeks severance pay "because he had no warning" that his employment was about to end and that she paid him for his accrued vacation time "because of his lack of warning." At the hearing, Barnett testified that he had had no idea that he was in jeopardy of losing his job.

The Board's finding that Barnett used insubordinate language and a tone of disrespect is supported by some evidence. To the extent that Barnett's language and tone violated a standard of reasonable conduct, however, there was no evidence that the employer ever communicated such a standard to Barnett or enforced such a standard with him or other employees. See *Millen v. Caldwell*, 253 Ga. at 115. Rather, Butler had tolerated similar conduct by Barnett during more than three years of employment and had never issued any prior warnings that insubordination of that sort would lead to termination. Because the hearing officer apparently concluded that Barnett was disqualified for benefits based solely on his insubordination, without considering his evidence that he did not know that such conduct was likely to result in his termination, this Court is unable to determine whether the employer carried its burden of proving facts which would constitute grounds for denial of unemployment compensation under Georgia law. See id. at 115-116. Accordingly, this case is

remanded to the superior court with direction that it remand to the Department for further proceedings consistent with this opinion. Id.; see also *Davane v. Thurmond*, 300 Ga. App. at 477 (employer failed to carry burden of showing that the employee should have known that her conduct would likely result in termination); *Barron v. Poythress*, 219 Ga. App. at 777 (accord).

*Judgment reversed and case remanded. Phipps, C. J., concurs. Branch, J., concurs in judgment only.*