**THIRD DIVISION**
**ANDREWS, P. J.,**
**DILLARD and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be**
*physically received* **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**November 21, 2013**

# In the Court of Appeals of Georgia

A13A1648. CASE v. BUTLER et al.

MᴄMɪʟʟɪᴀɴ, Judge.

We granted Mary E. Case's application seeking discretionary review of the superior court's order affirming the denial of unemployment benefits, and she filed the present appeal.[1] We reverse for the following reasons.

The circumstances that led to the termination of Case's employment are undisputed. On March 22, 2012, she was employed as a licensed practical nurse supervisor at Magnolia Manor Nursing and Rehabilitation Center on St. Simons Island ("Magnolia Manor"), where she had worked for seven years. That day, as Case was distributing medication to the residents of Magnolia Manor, a subordinate reported that a resident with an extensive medical history was confused. Case was

---

[1] We note that Magnolia Manor filed no brief on appeal.

concerned because mental confusion can be a symptom of various medical problems. In an attempt to quickly assess the resident's mental status, Case went to the resident's room and told her that she was about to administer a pain patch that Case knew had not been prescribed to the resident. The resident replied that she did not get a pain patch. Case testified that this response demonstrated to her that the resident was not confused and that Case "didn't have to rush out and call the Doctor." Case never actually administered the patch to the resident. Nevertheless, after the resident's family reported the incident, Magnolia Manor terminated Case's employment finding that she "displayed behaviors that were detrimental to patient care."[2]

Case subsequently applied for unemployment benefits, which were initially refused by a claims examiner. Case appealed, and two hearings were held before an administrative hearing officer ("AHO").[3] The AHO reversed the claims examiner's ruling and allowed benefits. In her order, the AHO noted that Magnolia Manor had a policy requiring that employees "report a resident's condition to the resident's

---

[2] The employer's sole witness at the hearing was its human resources coordinator, who testified that Case previously had been suspended and had received a final warning, making her subject to termination upon any further violation.

[3] Magnolia Manor had no representative at the first hearing, but was able to have the case reopened upon showing cause for the representative's failure to appear.

doctor if the employee believed that the resident suffered from a mental issue." But she concluded that Case was not disqualified from receiving benefits because Magnolia Manor failed to meet its burden of showing that Case was "at fault for her discharge by a deliberate, willing, and knowing action on her part or that she failed to perform her duties."

The employer appealed this determination to the Board of Review of the Georgia Department of Labor (the "Board"), which reversed, finding that Magnolia Manor had carried its burden of showing that Case was disqualified from receiving benefits. The Board found that "[w]hile there is no evidence the claimant intended to administer the wrong medication or harm the patient, [Case] overstepped her authority[,] . . . placed the patient's health at risk and could have caused severe medical consequences[, . . . and] was grossly negligent in the performance of her duties."

Case then petitioned for judicial review and after a hearing, the superior court denied her appeal. In making this determination, the superior court found that Case

> acknowledged, in writing, that with respect to medications she was obligated to follow the orders of the prescribing physician, and not deviate from them. Making a statement to a patient to the effect that a medication which had not been prescribed for her was about to be

3

administered was inexcusable poor judgment, and it was contrary to the spirit of the policy [Case] agreed to follow.

The court noted that the potential consequences to Magnolia Manor from Case's actions were "obvious" and could be "highly detrimental to the employer's reputation." Thus, the superior court concluded that Magnolia Manor had good cause for terminating Case.

On appeal, Case argues that the superior court applied the wrong standard of review in considering her denial of benefits and further argues that the Board's findings are not supported by the evidence.

1. We first address Case's argument that the superior court failed to adhere to the proper standard of review by making findings of fact not made by the Board. We agree.

Under Georgia law, when a superior court reviews a decision by the Board, "the findings of the [Board] as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law." OCGA § 34-8-223 (b). Thus, "[t]he factual determinations of the board must be affirmed if there is 'any evidence' to support them." (Citation omitted.) *TNS Mills v. Russell*, 213 Ga. App. 107, 107 (443 SE2d

4

658) (1994). See also *Williams v. Butler*, 322 Ga. App. 220, 222 (1) (744 SE2d 396) (2013). And "[t]he superior court is not authorized to weigh the evidence and substitute its factfindings for those of the administrative trier of fact." (Citation omitted.) *McGahee v. Yamaha Motor Mfg. Corp. of America*, 214 Ga. App. 473, 474 (448 SE2d 249) (1994).

Here, the superior court exceeded the scope of its review by making its own findings of fact rather than evaluating whether any evidence supported the Board's decision. The court based its ruling on a Magnolia Manor policy that was not referenced in the Board's decision and made specific findings with regard to Case's behavior based on that policy. Therefore, the superior court engaged in factfinding, which it is not permitted to do. Nevertheless, we must affirm the superior court's decision if it is right for any reason. *Aimwell, Inc. v. McLendon Enterprises, Inc.*, 318 Ga. App. 394, 400 (2) (734 SE2d 84) (2012).

2. Turning to Case's argument that the Board's findings are not supported by the evidence, this Court, too, applies the any evidence test. *Robinson v. Butler*, 319 Ga. App. 633, 634-635 (737 SE2d 731) (2013).

Applying that standard, we conclude that the evidence did not support the Board's finding that Case's actions "placed the patient's health at risk and could have

caused severe medical consequences." In fact, the Board acknowledged that "there is no evidence [that Case] intended to administer the wrong medication or harm the patient," and it is undisputed that Case never administered the pain patch to the resident. Thus, the record contains no evidence that the resident's health was ever at any risk. Nevertheless, from these findings, the trial court concluded that Case overstepped her authority and was grossly negligent in the performance of her duties.

We find that these conclusions and the evidence adduced at the hearing do not support the denial of unemployment benefits to Case. Georgia law provides that an individual shall be disqualified for unemployment benefits if he or she was discharged "for failure to obey orders, rules, or instructions or for failure to discharge the duties for which the individual was employed as determined by the Commissioner [of Labor] according to the circumstances in the case." OCGA § 34-8-194 (2) (A). Accordingly, "[i]f the employee refuses to comply with a *specific,* equitably applied and reasonable rule, then the employer may fire him or her for misconduct and be confident that no unemployment compensation benefits . . . will be paid." (Emphasis supplied.) *Millen v. Caldwell*, 253 Ga. 112, 114 (317 SE2d 818) (1984).

But this provision must be read in conjunction with OCGA § 34-8-194 (2) (B), which states that

6

[a]n individual shall not be disqualified for benefits under subparagraph (A) of this paragraph if, based on the rules and regulations promulgated by the Commissioner, the Commissioner determines: (i) The individual made a good faith effort to perform the duties for which hired but was simply unable to do so; (ii) The individual did not intentionally fail or consciously neglect to perform his or her job duties[.]

Therefore, an employer must show that the termination was caused by "the deliberate, conscious fault" of the employee before he or she may be disqualified from receiving unemployment benefits. (Citation and punctuation omitted.) *Barron v. Poythress*, 219 Ga. App. 775, 776 (466 SE2d 665) (1996). And "'[f]ault' means more than mere failure to perform one's work duties." *Millen*, 253 Ga. at 113. This comports with the "strong public policy favoring payment of unemployment benefits to persons unemployed through no *fault* of their own. OCGA § 34-8-2." (Emphasis in original.) Id. Thus, "[d]isqualification is an exception to the statutory scheme for unemployment benefits and the employer must show by a preponderance of the evidence that disqualification is appropriate." (Citations omitted.) *Barron*, 219 Ga. App. at 776.

Applying these standards, the Georgia Supreme Court has held that "benefits should not be denied to an employee who has been fired for failure to comply with

7

unknown work requirements, or requirements which could not have been reasonably anticipated." (Emphasis in original.) *Millen*, 253 Ga. at 114. "If an employer nevertheless wishes to be arbitrary about [applying unwritten rules or in enforcing rules], Georgia law allows it nearly free rein as far as the firing is concerned, but not as far as payment of unemployment compensation benefits to the ex-employee is concerned." Id. And "[a] determination of a disqualifying fault must be made in the context of whether the employee would reasonably expect, under all the circumstances of employment, that sanction would result from a violation. [Cit.]" *Barron*, 219 Ga. App. at 777. Although we are bound to apply the any evidence standard, "[w]hether there is fault assignable to [a] claimant, which is a legal requirement for disqualification, often requires a legal conclusion. [Cit.]" Id.

Here, although the Magnolia Manor representative stated that Case should have contacted a social worker or the resident's physician "if she had a question about the resident's . . . mental status," Magnolia Manor failed to prove that Case intentionally refused or consciously neglected to comply with any rule or policy in that regard. Case testified that she took the disputed actions in an effort to determine whether, in fact, a question did exist with regard to the resident's mental status, and she agreed that if she had found the resident to be confused, she would be required to call the

8

doctor. Although Magnolia Manor disapproved of Case's methods, the evidence does not show that Case acted with "deliberate, conscious fault" in disobeying any policy. And "[s]ince disqualification of benefits requires 'deliberate, conscious fault' by the employee, an employee's bona fide effort to comply with an employer's orders is not consistent with a finding of fault." (Citation omitted.) *Davane v. Thurmond*, 300 Ga. App. 474, 477 (685 SE2d 446) (2009).[4]

"As [Magnolia Manor] did not carry its burden of showing that [Case] came within the disqualification exception, she is entitled under the law to unemployment compensation and the superior court erred in affirming the denial of benefits." (Citation and punctuation omitted.) Id. at 478. See also *Fulton County School Dist. v. Hersh*, 320 Ga. App. 808, 813 (1) (740 SE2d 760) (2013).

*Judgment reversed. Andrews, P. J., and Dillard, J., concur.*

---

[4] In any event, we note that the Board never identified any Magnolia Manor rule or policy with which Case intentionally failed or consciously neglected to comply, nor did the Board make any finding that Case's termination was caused by any deliberate, conscious fault on her part.