**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**October 3, 2014**

# In the Court of Appeals of Georgia

A14A0777. CHISHOLM v. GEORGIA DEPARTMENT OF LABOR et al.

BARNES, Presiding Judge.

Sheralyn R. Chisholm's employer had a policy requiring employees to report arrests within five days of their occurrence. Chisholm was discharged from employment when she reported her arrest seven days late. Following the grant of her application for interlocutory appeal, Chisholm now appeals the superior court's order affirming a decision by the Board of Review of the Department of Labor (the "Board of Review") to disqualify her from receiving unemployment benefits because of her failure to report her arrest within the five-day deadline. Because Chisholm could not have reasonably expected that a short, immaterial delay in reporting her arrest to her employer would result in her termination, we reverse.

Judicial review of an administrative decision requires the court to determine that the findings of fact are supported by any evidence and to

examine the soundness of the conclusions of law that are based upon the findings of fact. When this Court reviews a superior court's order in an administrative proceeding, our duty is not to review whether the record supports the superior court's decision but whether the record supports the final decision of the administrative agency.

(Citations, punctuation, and footnote omitted.) *Davane v. Thurmond*, 300 Ga. App. 474, 475 (685 SE2d 446) (2009). Mindful of these principles, we turn to the record in the present case.

The evidence adduced at the administrative hearing showed that in November 2010, the Georgia Department of Behavioral Health & Developmental Disabilities (the "Behavioral Health Department" or the "Department") hired Chisholm to work as a nurse educator at its regional hospital in Columbus. During her orientation, Chisholm signed a form acknowledging her responsibility to review and comply with the Department's personnel policies, including Policy Number 1201, *Standards of Conduct and Ethics in Government* (the "Standards of Conduct"). The Standards of Conduct totaled 11 pages and included the following section:

D. DISCLOSURE OF INFORMATION

1. All applicants/employees are **required** to disclose felony convictions on *APPLICATIONS FOR EMPLOYMENT* and convictions and/or

pending charges on *STATE SECURITY QUESTIONNAIRE / LOYALTY OATH* Forms.

a. Falsification or misrepresentation of information, including criminalhistory, is **prohibited** and **may** result in an offer of employment being withdrawn from an applicant or separation of an employee.

b. **Material** falsification or misrepresentation of any information, including criminal history, **will** result in an offer of employment being withdrawn from an applicant or separation of an employee. *"Material" refers to information which directly influences and/or impacts the hiring decision based on records, credentials and/or qualifications.*

. . .

2. Employees are **required** to notify their supervisors or human resource representative of any arrests and/or convictions within five calendar days of the date of arrest or conviction. A determination of appropriate action will be made on a case by case basis.

(Emphasis in original.)

Chisholm later transferred to the Behavioral Health Department's regional hospital in Atlanta. Subsequently, on October 24, 2012, Chisholm was arrested.[1] Over

---

[1] Chisholm was arrested for failing to appear in court on charges of making harassing telephone calls. The charges stemmed from a dispute between Chisholm

the next few days, Chisholm and her husband called Chisholm's supervisor on two occasions when she had shifts scheduled at the hospital and notified the supervisor that she would be unable to work, but did not give a reason for her absence.

After returning to work, Chisholm mentioned her arrest to a co-worker, who suggested that she do some research and find out if the Behavioral Health Department had an arrest disclosure policy. The "moment" that her co-worker made this suggestion, Chisholm researched the personnel policies on the Internet, read the disclosure policy for the first time, and immediately reported her arrest to her superiors that same day, November 5, 2012. The Department does not dispute that the information that Chisholm provided to her superiors about her arrest was accurate.

Chisholm continued to work at the Atlanta hospital without incident through the end of November. However, on December 1, 2012, she emailed her superiors with complaints about understaffing and unsafe conditions at the hospital and requested that she be transferred to another hospital within the Behavioral Health Department. Two days later, Chisholm was informed that she had to either resign or be terminated

---

and the owner of the personal care home where her disabled daughter lived over the proper care and treatment of her daughter. The charges were later dropped.

due to her failure to report her arrest within five days as specified in the Standards of Conduct. She resigned under protest.

Chisholm applied for and initially was awarded unemployment benefits, but the Behavioral Health Department challenged the award. At the administrative hearing before an administrative hearing officer ("AHO"), Chisholm's immediate supervisor testified that the action taken by the Department in this case was not based on Chisholm's "work performance," which had always "been great." According to the supervisor, "the whole thing went to the black and white of [the] policy" requiring that an arrest be reported within five days of its occurrence, and the human resources department had made the decision that Chisholm should be terminated for violating the policy if she refused to resign. The supervisor further testified that he had been unaware that termination was even a "possibility" for failing to comply with the five-day reporting requirement.

Chisholm testified that she had been unaware of the personnel policy that arrests had to be reported to the Behavioral Health Department within five days, much less that failure to strictly comply with the time deadline could lead to termination. She conceded that during her orientation, she signed the form acknowledging that she was required to review and comply with the Department's personnel policies, but had

not reviewed the policies on her own at that time. Chisholm testified that the personnel policies were not emphasized during her orientation, and that she had been given a large number of orientation materials and had signed the acknowledgment form "like most people do" without paying "any particular attention" to the individual policies, including the policy related to the disclosure of arrests.

Lastly, an employee relations specialist with the Behavioral Health Department testified at the administrative hearing. The specialist denied that Chisholm was forced to resign as a result of her complaint over work conditions or her request for a transfer, and reiterated that Chisholm was a "great employee." According to the specialist, the "only policy" that Chisholm had violated was the policy requiring that an arrest be reported within five days of its occurrence, and the human resources department had made the decision to terminate Chisholm for violating that policy.

Following the administrative hearing, the AHO found that Chisholm had resigned only after being informed that she would be terminated, and that, as a result, she had been discharged from her position by the Behavioral Health Department. The AHO further found that Chisholm had been discharged for her failure to comply with the personnel policy that required arrests to be reported within five days, not as retaliation for her complaints about her work conditions or her request for a transfer.

6

The AHO noted that Chisholm had signed the acknowledgment form requiring her to review and comply with the personnel policies and went on to conclude that Chisholm was disqualified from receiving unemployment benefits under OCGA § 34-8-194 (2) (A) because of her failure "to obey orders, rules, or instructions" of her employer by not strictly complying with the five-day reporting requirement.

Chisholm appealed the AHO's decision to the Board of Review. The Board of Review adopted the findings of the AHO and affirmed the decision that Chisholm was disqualified from receiving unemployment benefits under OCGA § 34-8-194 (2) (A). The Superior Court of DeKalb County subsequently affirmed the final decision of the Board of Review. Chisholm filed an application for discretionary appeal, which this Court granted. Chisholm now appeals, arguing that the Board of Review's final decision to disqualify her from receiving unemployment benefits was unsupported by the administrative record.

Under OCGA § 34-8-194 (2) (A), an individual may be disqualified from receiving unemployment benefits if she is discharged by her employer "for failure to obey orders, rules, or instructions or for failure to discharge the duties for which the individual was employed as determined by the Commissioner according to the circumstances in the case." But there is a strong public policy in favor of paying

7

unemployment benefits to one who is discharged through no fault of her own, and, therefore, "disqualification is not appropriate unless the employer shows the discharge was caused by the deliberate, conscious fault of the claimant." (Citation and punctuation omitted.) *Davane*, 300 Ga. App. at 476. See OCGA § 34-8-194 (2) (B); *Millen v. Caldwell*, 253 Ga. 112, 113 (317 SE2d 818) (1984); *Case v. Butler*, 325 Ga. App. 123, 126 (2) (751 SE2d 883) (2013); *Fulton County School Dist. v. Hersh*, 320 Ga. App. 808, 812 (1) (740 SE2d 760) (2013).

Furthermore,

Fault which is of a disqualifying nature cannot be a technical failing, a minor mistake or the mere inability to do the job. Rather, a breach of duty to constitute fault must be such as length of service, nature of duties, prior warnings, equal enforcement of all progressive discipline programs and any other factors which might be used to establish reasonable expectations that the discharge was imminent. The claimant must have been aware that in a discharge which resulted from the violation of the rule, the violation would likely result in termination. In the case of a discharge due to a violation of an employer's rule, order [or] instruction, an employer has the burden of proving that the claimant knew or should have known that the violation of the rule, order or instruction could have resulted in termination.

(Punctuation omitted.) Ga. Comp. R. & Regs. r. 300-2-1-.01 (9) (c). See *Millen*, 253 Ga. at 115 ("[A] fault which is of a disqualifying nature cannot be a technical failing, a minor aberration, or the want of mere punctilio. Rather, a breach of duty, to constitute 'fault,' must be substantial, and such that sanction is reasonably expectable under all the circumstances of employment[.]") (citation and punctuation omitted). Thus, an employer alleging disqualification must show that the employee had a "reasonable expectation of termination" arising from the alleged workplace violation; otherwise, "fault" for the termination is not assignable to the employee, and disqualification is inappropriate under OCGA § 34-8-194 (2) (A). *Barron v. Poythress*, 219 Ga. App. 775, 777 (466 SE2d 665) (1996). See *Barnett v. Ga. Dept. of Labor*, 323 Ga. App. 882, 885 (748 SE2d 688) (2013) (physical precedent only); *Davane*, 300 Ga. App. at 477. And "[a]lthough we are bound to apply the any evidence standard, whether there is fault assignable to a claimant, which is a legal requirement for disqualification, often requires a legal conclusion." (Citation and punctuation omitted.) *Case*, 325 Ga. App. at 127 (2).

Here, Chisholm argues that there is no evidence in the administrative record to show that her termination was caused by her conscious, deliberate fault, or that she

9

could have reasonably expected that her short delay in reporting her arrest would result in her termination. The Behavioral Health Department responds that Chisholm's signing of the form acknowledging that she was required to review and comply with the personnel policies, combined with her failure to review and comply with the five-day reporting policy, was sufficient to authorize a finding of conscious, deliberate fault on her part. The Department further argues that Section D of the Standards of Conduct, which addresses the disclosure of information, put Chisholm on reasonable notice that she was subject to termination for reporting her arrest after five days had passed.

Pretermitting whether there was evidence that Chisholm's termination was the result of conscious, deliberate fault on her part, we conclude that Chisholm could not have reasonably expected that she would be terminated for reporting her arrest to the Behavioral Health Department a few days late. The evidence is uncontroverted that Chisholm's supervisor was pleased with her work performance, and that the sole reason for her termination was the fact that she reported her arrest to the Department seven days late under the personnel policy.[2] It is likewise uncontroverted that

---

[2] On appeal, Chisholm does not challenge the AHO's finding, adopted by the Board of Review, that her termination was not in retaliation for her complaints about her work conditions or for her request to transfer to another hospital.

10

Chisholm had never been informed by her supervisors or anyone else in the Department that termination could result from an employee's failure to strictly comply with the five-day reporting requirement, and even her supervisor testified that he had been unaware that termination was a "possibility" in this context. Furthermore, there is no evidence that Chisholm's seven-day delay in reporting had any material effect on the Department's ability to evaluate the circumstances or seriousness of her arrest, or that the short delay caused any harm or posed any risk of harm to other hospital employees or patients. Finally, there is no evidence that Chisholm supplied any information to the Department about her arrest that was false or misleading.

In light of this record, the uncontroverted evidence shows that Chisholm's seven-day delay in reporting was simply a "technical failing" that would not have led an employee to reasonably expect that termination would result. Ga. Comp. R. & Regs. r. 300-2-1-.01 (9) (c); *Millen*, 253 Ga. App. at 115. See *Davane*, 300 Ga. App. at 477-478 (employee could not have reasonably expected that her inability to confirm within 48 hours that she would be able to report to an out-of-town assignment would result in her termination). Compare *McCauley v. Thurmond*, 311 Ga. App. 636, 639 (716 SE2d 733) (2011) (concluding that employee "should have been aware that failing to meet work deadlines, entering partially blank supporting

11

case notes, and ignoring her regional manager's direct communications and orders subjected her to termination"). "If an employer wishes to be arbitrary about such matters, Georgia law allows it nearly free rein as far as the firing is concerned, but not as far as payment of unemployment compensation benefits to the ex-employee is concerned." (Citation and punctuation omitted.) *Davane*, 300 Ga. App. at 478.

In reaching this conclusion, we are unpersuaded by the Behavioral Health Department's argument that Section D of the Standards of Conduct provided Chisholm with reasonable notice that she would be subject to termination for reporting her arrest a few days late. Section D.2, which requires that arrests or convictions be reported to the Department within five days, simply states that "[a] determination of appropriate action will be taken on a case by case basis." Nothing in Section D.2 would cause an employee to reasonably suspect that termination would result from a short, immaterial delay in reporting an arrest. This is particularly true when Section D.2 is contrasted with Section D.1, which expressly states that "separation of an employee" from the Department "may" result from an employee's falsification or misrepresentation of information about her criminal history, and "will" result if the information falsified or misrepresented is "material." Reading Sections D.1 and D.2 together, an employee would reasonably expect that a mere technical

12

violation of Section D.2 would result in a less serious sanction than "separation" from employment.

Under these combined circumstances, Chisholm had no reasonable expectation of termination and "fault" for her discharge could not be assigned to her. It follows that the Department of Behavioral Health failed to carry its burden of showing that Chisholm was disqualified from unemployment benefits under OCGA § 34-8-194 (2) (A) . "As [the Department] did not carry its burden of showing that [Chisholm] came within the disqualification exception, she is entitled under the law to unemployment compensation and the superior court erred in affirming the denial of benefits." (Citation and punctuation omitted.) *Davane*, 300 Ga. App. at 478.

*Judgment reversed. Boggs and Branch, JJ., concur*.