**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and BRANCH, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**November 20, 2013**

# In the Court of Appeals of Georgia

A13A0940. DODSON v. SYKES INDUSTRIAL HOLDINGS, LLC et al.

BRANCH, Judge.

Donald R. Dodson brought suit alleging that he has an ownership interest in and an employment agreement with Sykes Industrial Holdings, LLC ("Sykes LLC") and that the company failed to honor those agreements and failed to pay him for his services. The defendants contend that Dodson was only ever a trainee and that they never agreed that Dodson would be an owner or receive commissions. The trial court granted summary judgment in favor of the defendants, and Dodson appeals. We hold that the trial court erred by granting summary judgment because Dodson had a motion to compel pending that appears reasonably calculated to lead to the discovery of admissible evidence and he moved for a continuance of the hearing on the motion for

summary judgment so that the court could address his motion first. We agree and therefore vacate and remand for further proceedings.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant. *Home Builders Assn. of Savannah v. Chatham County*, 276 Ga. 243, 245 (1) (577 SE2d 564) (2003).

Construed in favor of Dodson, the evidence shows that in 2009, following a downturn in sales at Sykes LLC , Ralph H. Sykes, the founder, president, and 98 percent owner of Sykes LLC[1], was looking to expand his industrial pump sales business when he met Dodson, who was interested in helping to increase sales for the company. Sykes told Dodson that they would be partners with Dodson owning 40 percent of the company and that, as part of his compensation, Dodson would receive a commission of 40 percent of the gross profits generated by his accounts. Dodson and Sykes also agreed that in lieu of Dodson's initial capital contribution, the company would retain Dodson's initial commission payments to bolster the Company's assets. Sykes began to work for Sykes LLC in mid 2009, and, at one point, Sykes wrote a

---

[1] Two of Sykes's children own the other two percent.

2

letter to a third party stating that "we hired Don Dodson . . . whose sole responsibility is to call on engineering firms." Sykes referred to Dodson as his partner from time to time and described his relationship with Dodson as a partnership to at least one employee. On one occasion, Dodson and Sykes jointly held a meeting for the employees in which they said they would be offering a revenue sharing plan.

In early 2010, Sykes had his accountant George Hillegass draw up contracts regarding Dodson's relationship with the company. The draft "Operating Agreement," which Sykes and Dodson referred to as a partnership agreement, provided that Dodson would own 40 percent of the company. The draft employment agreement provided that Dodson would get 40 percent of the gross profits that he helped generate. The parties, however, never signed the written agreements, although, according to Dodson, Sykes gave his word that he would sign them.

Sykes began to pay Dodson in December 2010 with a check in the amount of $10,000, followed by checks for $13,000 on January 24, 2011, and $15,000 on February 8, 2011. A company document dated January 17, 2011, entitled "Pumps Order Log" for the year 2010 lists Dodson as the salesman on 37 of the company's 89 customers. According to Dodson's calculations, the document shows that for the year 2010, he was credited with $4,091,020 in total sales revenue, with a gross profit to the

company totaling $1,407,352.34. In February 2011, Dodson asked Sykes for an accounting and payment of his commissions, but Sykes told Dodson that he thought that Dodson's earned commissions and share in the company should remain in the company accounts for the time being. On March 14, 2011, however, Sykes paid Dodson an additional $15,000 followed by $100,000 on March 25, 2011. In May 2011, Gail Scoggins, who handles bookkeeping, accounting, office management, and other functions for the company, asked Dodson in an email to provide her with an update on 24 sales accounts. But Dodson received no further payments. In July 2011, Sykes told Dodson that one of the company's pump suppliers had been lost, that he would be winding down the company, and that no further "distributions" would be made. Sykes admits that he never told Dodson that he was not living up to expectations at the company.

Contrary to the evidence construed in favor of Dodson, Sykes deposed that he could not say whether the company had ever actually hired Dodson but that Dodson was an unpaid trainee and never rose above that level. Sykes only paid Dodson the $153,000 as a "stipend" for "living expenses" because Dodson said he needed the money, and Sykes testified that the payments were not related to Dodson's sales performance or any purported ownership interest. Sykes also testified that Dodson

4

would have been paid when he made a profit but that he never generated any profits during his training period. Sykes further testified that Dodson was never officially an employee of the company; rather, he was an independent contractor. Sykes testified that none of the accounts listed in the email exchange between Dodson and Scoggins were actually Dodson's accounts and that salesman were never paid based on the Pumps Order Log. Finally Sykes testified that he never signed the draft Operating Agreement or employment agreement, that he never gave his word that he would do so, and that he never promised Dodson an ownership interest in the company or that he would be paid a 40 percent commission.

On August 29, 2011, Dodson filed a verified complaint against Sykes and Sykes LLC for injunctive relief, appointment of a receiver, and damages for breach of contract and several torts arising out of the alleged partnership and employment agreements.[2] On October 10, 2011, the defendants filed a verified answer and asserted

[2] After initially granting Dodson a temporary restraining order and a temporary receiver, the trial court eventually denied Dodson's requests for an interlocutory injunction and appointment of a receiver. Specifically, at the time of the complaint, Dodson moved ex parte for a TRO and appointment of a temporary receiver. On September 2, 2011, the trial court granted the TRO and appointed a temporary receiver. After serving the defendants with the complaint and the order on the TRO, Dodson moved for an interlocutory injunction and appointment of a receiver. On September 28, 2011, the defendants moved to dissolve the TRO, to oppose a preliminary injunction, to discharge the temporary receiver, and for a hearing; the

counterclaims. On October 31, 2011, Dodson noticed the deposition of Sykes for November 17, 2011, and served Sykes with a request to produce 15 types of documents at his deposition. Dodson purported to make the request pursuant to OCGA §§ 9-11-34 and 24-10-26, and the final sentence of the request states, "Should the date and time of this deposition be changed for any reason, this Request to Produce shall remain in full force and effect." It is not disputed that the defendants did not provide a written response to the document request. Dodson states that at the request of the defendants, the deposition was reset to December 23 to accommodate the schedule of the defendants.

On December 13, 2011, however, the defendants moved for summary judgment and requested a hearing on the motion. Although Sykes's deposition took place on December 23, 2011, on January 6, 2012, Dodson filed an emergency motion to extend the time to respond to the motion for summary judgment and for attorney fees on the grounds that, as of the filing of the motion for summary judgment, depositions had not been taken, the parties had yet to respond to discovery requests, and, in general, discovery had not been completed. Moreover, although Dodson had been able to

---

defendants filed an affidavit of Sykes, with exhibits attached, in support of the motion. On October 27, 2011, the trial court denied Dodson's motion for a preliminary injunction and discharged the temporary receiver.

6

depose Sykes, Dodson had not received a copy of the transcript and he needed to take depositions of Scoggins and Hillegass. Finally, Dodson asserted that the defendants had refused to consent to such an extension of time. The defendants opposed the motion for an extension of time, but the trial court does not appear to have ruled on it. On January 13, 2012, Dodson replied to the defendants' motion for summary judgment but argued that a decision on the motion for summary judgment would be premature and should be denied because significant discovery remained.

On January 17, 2012, Dodson, pursuant to OCGA § 9-11-34 (c), served a request for production of documents on non-party witness Hillegass, including a request to take Hillegass's deposition; counsel for the defendants was copied with these requests, but the defendants never objected to them.[3] On March 2, 2012, Dodson served interrogatories and additional requests to produce on the defendants. The defendants never responded.

---

[3] In his request for documents, Dodson sought, inter alia, draft and final operating agreements, partnership agreements, and employment agreements relating to Dodson; documents that pertain to meetings, discussions, or conferences with or pertaining to Dodson; documents reflecting payments made by Sykes LLC or Sykes to Dodson; payments made by Sykes LLC to Sykes; and all instructions or directions given to Hillegass by Sykes relating to Dodson's association with Sykes LLC.

According to a letter that Dodson's counsel sent to the defendants' counsel in an attempt to resolve the discovery dispute, on March 9, 2012 the defendants produced only two sets of documents: a reproduction of documents produced by Dodson to the defendants, and evidence related to one of the projects on which Dodson allegedly worked while associated with Sykes LLC. The letter also states that the defendants never objected to the request that Hillegass produce documents nor asserted any privilege and that therefore any objections to the Hillegass request by the defendants had been waived. Counsel for Dodson objected to the defendants' failure to produce additional documents and to any continued obstruction of Dodson's attempts to obtain discovery from Hillegass. On March 20, 2012, four days after Dodson's discovery letter, Hillegass moved to quash the discovery requests sent to him and for a protective order from the court in which he stated that the defendants had not consented to allow him to produce any documentation nor waived the accountant-client privilege.

On March 28, 2012, Dodson moved to compel discovery regarding requests made to the defendants and to Hillegass.[4] The defendants never responded to the

---

[4] In his motion, Dodson sought an order from the trial court (a) compelling the defendants to produce documents responsive to Dodson's October 31, 2011, request that Sykes produce 15 types of documents; (b) compelling Hillegass to produce documents responsive to Dodson's January 17, 2012 non-party request to produce and to be made available for deposition; (c) denying Hillegass's motion to quash and for

motion. On April 10, 2012, Dodson noticed the depositions of Gail Scoggins and Hillegass.[5] The trial court then announced a motions hearing for April 30, 2012. Dodson thereafter moved to continue the hearing on the motion for summary judgment so that the court could hear the pending discovery matters first, including his motion to compel. The defendants opposed the motion.

The trial court held a hearing on April 30, 2012, at which the court stated that if it were to grant the defendants' motion for summary judgment, the discovery matters would be moot:

> I know that there are outstanding discovery matters and those matters . . . will be contingent on my ruling on summary judgment. If the motion is granted, there is no reason for the court to deal with the discovery issues because they will be moot.

The court took the matters under advisement, and on May 31, 2012, the trial court granted Hillegass's motion to quash and for a protective order without explanation. Then on August 28, 2012, the trial court granted the defendants' motion for summary judgment and held that in light of the summary judgment, Dodson's motion to compel

a protective order; and (d) granting Dodson attorney fees in connection with the motion.

[5] Neither Scoggins nor Hillegass has yet been deposed.

and for attorney fees was moot. Dodson's motion for reconsideration was denied and this appeal ensued.

1. Dodson first contends that the trial court erred by granting summary judgment while his motion to compel was pending. An appellate court "will not reverse a trial court's decision on discovery matters absent a clear abuse of discretion." (Citations and punctuation omitted.) *Ambassador College v. Goetzke*, 244 Ga. 322, 323 (1) (260 SE2d 27) (1979). Nevertheless, "[a]s a general rule, this Court does not condone the grant of summary judgment while a motion to compel discovery is pending, unless it can be determined that the disallowed discovery would add nothing of substance to the party's claim." (Citation and punctuation omitted.) *Parks v. Hyundai Motor America*, 258 Ga. App. 876, 877 (1) (575 SE2d 673) (2002).

In *Parks*, the plaintiffs filed discovery requests within the original discovery period, to which the defendant responded; the plaintiffs then filed a motion to compel more complete answers. Id. at 877 (1). The trial court scheduled a hearing on all outstanding motions, including those for summary judgment and to compel discovery. Id. The plaintiffs then sought a delay of the summary judgment hearing until the discovery issues could be fully resolved. The trial court never responded to this request and, instead, heard argument on the motion for summary judgment and

10

deferred ruling on the motions to compel. Id. at 878 (1). At the combined hearing, the trial court stated that "there's no reason for me to compel discovery if I throw the case out" on summary judgment. Id. On appeal of summary judgment in favor of the defendant, this Court held that the trial court's consideration of the defendant's motion for summary judgment was premature because, based on a review of the record, this Court could not "say that the discovery [sought by the plaintiffs] would add nothing of substance to their claim." Id. at 878, 880 (1). This Court concluded that the plaintiffs "raised discovery issues that required judicial scrutiny," and that the trial court's consideration of the defendant's motion for summary judgment motion "was premature." Id. at 880 (1).

Here, as shown above, within the original discovery period,[6] Dodson requested discovery from Sykes and from a non-party witness; the defendants never responded in writing or objected to any of Dodson's requests; when the defendants filed their motion for summary judgment two months after their answer, Dodson sought an

---

[6] "In order for a party to utilize the court's compulsory process to compel discovery, any desired discovery procedures must first be commenced promptly, pursued diligently and completed without unnecessary delay and within 6 months after the filing of the answer. At any time, the court, in its discretion, may extend, reopen or shorten the time to utilize the court's compulsory process to compel discovery." Uniform Rules of Sup. Ct., Rule 5.1.

extension of the time to respond in order to allow more discovery; the defendants only ever produced a limited number of documents and Hillegass refused to respond fully to Dodson's requests; Dodson's counsel corresponded with counsel for the defendants in an attempt to resolve the discovery disputes; Dodson filed a motion to compel, to which the defendants never responded; and, after the court scheduled a hearing on all pending motions, Dodson moved to continue the hearing on the motion for summary judgment until the discovery issues could be resolved. The court never responded to Dodson's motion to extend the time to respond to summary judgment or his motion to continue consideration of summary judgment. Instead, the trial court ultimately deemed the motion to compel moot.

Our review of the record shows that, as in *Parks*, we cannot say that the discovery Dodson sought would add nothing of substance to his claim. For example, Dodson sought Hillegass's knowledge of the contract negotiations between Dodson and Sykes and all documents related to that process, which could be relevant to Dodson's claims of breach of contract and possibly other claims,[7] and Dodson sought from Sykes all evidence relating to Dodson's association with Sykes LLC, including

---

[7] It is possible that Hillegass possesses non-privileged information subject to discovery.

all materials or documents that reflect payments made to Dodson in connection with his association with Sykes LLC. These requests and others appear reasonably calculated to lead to the discovery of admissible evidence and, therefore, are relevant to the subject matter of the pending action.

For the reasons stated herein, we vacate the grant of summary judgment and remand the case for further proceedings consistent with this opinion. See *Erickson v. Hodges*, 257 Ga. App. 144, 146 (570 SE2d 420) (2002) (ruling on motion for summary judgment vacated as premature, given pending discovery); *Shipley v. Handicaps Mobility Systems*, 222 Ga. App. 101, 102 (473 SE2d 533) (1996) (summary judgment premature when entered before plaintiff was able to question two key defense witnesses "who avoided her discovery attempts and filed affidavits in support of defendant's motion for summary judgment"). Compare *Smith v. U-Haul Company Georgia*, 225 Ga. App. 356, 357 (1) (484 SE2d 49 (1997) (trial court did not abuse its discretion denying plaintiff's supplemental discovery requests that were served over one year after discovery began and did not conform with OCGA § 9-11-34). On remand, the trial court should address all of the issues raised by the motion to compel as well as the defendants' arguments opposing the motion.

13

2. Because we are vacating the order granting summary judgment and remanding for resolution of the motion to compel, we need not reach Dodson's remaining enumerations of error regarding the merits of his claims against the defendants.

*Judgment vacated and case remanded with direction. Phipps, C. J., and Ellington, P. J., concur.*