**THIRD DIVISION**
**MCFADDEN, C. J.,**
**DOYLE, P. J., and HODGES, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**June 23, 2020**

# In the Court of Appeals of Georgia

A20A0164. GARRETT et al. v. DEPARTMENT OF HUMAN DO-006
    SERVICES et al.

DOYLE, Presiding Judge.

This case arises from the death of Jan Renee Garrett, who walked into traffic on Interstate 285 and was struck by a tractor trailer. Representatives of Garrett's estate and her beneficiaries ("the Plaintiffs") filed suit against the Georgia Department of Human Services ("DHS") and Teri D. Fields, in her individual and official capacity, alleging that their failures as permanent guardian and guardian ad litem ("GAL") of Garrett resulted in her death. The trial court dismissed the claims against DHS and Fields,[1] and the Plaintiffs appeal, arguing that the trial court erred

---

[1] The Plaintiffs initially included several John Doe defendants in their complaint, and after discovery, they substituted Angela Tompkins, in her individual and official capacity, as a defendant, alleging that she was appointed guardian of Garrett as a representative of DHS. **The record before this Court does not**

by (1) failing to consider their motion to reopen and compel discovery and denying their motion for sanctions; (2) granting DHS's motion to dismiss; (3) granting Fields's motion to dismiss; and (4) granting Fields's request for damages. For the reasons that follow, we affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.

The record shows that Garrett was diagnosed with paranoid schizophrenia, failed to take her medication, acted out toward family and strangers, and frequently left her home at odd hours, leading her family members to file a petition with the probate court for appointment of a guardian and a conservator for her on February 5, 2013. On February 25, 2013, the probate court ordered a social worker to evaluate Garrett, which evaluation occurred on March 14, 2013.[2] Garrett refused to meet with the social worker, but one son spoke with the social worker, reporting that Garrett slept all day and would leave for most of the night, would not reliably bathe or keep food in the house, refused to take her medication, would beg for cigarettes or money around the community, physically attacked her son and tried to attack her grandson, and the son believed she was a threat to herself and others. Based on this information,

**demonstrate that the trial court dismissed the claims against Tompkins.**

[2] See OCGA § 29-4-11 (d) (1).

the social workers reported that Garrett lacked "sufficient capacity to make or communicate significant responsible decisions concerning her health and safety."[3]

On March 20, 2013, the probate court entered an order finding that there was probable cause to support a finding that Garrett was in need of a guardian under OCGA § 29-4-1, and it appointed Fields to serve as GAL to Garrett for the remainder of the proceedings.[4] Fields reviewed the records and met with Garrett, and she recommended that the court appoint a guardian for Garrett.

At a show cause/status conference hearing on April 8, the court appointed a conservator, but it found that the guardianship petition was incomplete, stating that the Plaintiffs "must file an amendment for the court to make a determination regarding a guardian."[5] Additionally, the probate court requested that DHS make an investigation and file a report within 30 days and for Fields and the appointed conservator to also file reports within 30 days. On April 15, 2013, prior to entry of the final order on guardianship, Tompkins, as a representative of DHS, executed a guardian's oath as to Garrett.

---

[3] See OCGA § 29-4-11 (d) (4).

[4] See OCGA § 29-4-11 (c) (4).

[5] See OCGA § 29-4-10.

3

On May 10, 2013, the probate court issued its final order and letters of guardianship, finding that Garrett was in need of a guardian because she lacked sufficient capacity to make responsible decisions concerning her health and safety. The court appointed Tompkins (as representative of DHS) as Garrett's guardian[6] and ordered DHS to investigate and file a report with the court within 30 days of the order. At approximately 10:30 p.m. on May 15, 2013, Garrett wandered onto Interstate 285, where she was struck and killed by a tractor trailer.

The Plaintiffs filed suit, alleging that DHS, Fields, and John Doe defendants had breached duties of care that they owed to Garrett as the result of appointment as her guardian and/or GAL. DHS answered and moved to dismiss/for judgment on the pleadings,[7] on the basis of lack of waiver of sovereign immunity and failure to state a claim for relief. Fields also moved for dismissal of the claims against her, arguing

[6] The order removed from Garrett all powers under OCGA § 29-4-21 (power to contract marriage; make, modify, or terminate other contracts; consent to medical treatment; establish a dwelling place; change domiciles; revoke a revocable trust; or bring or defend any legal action); however, the court did not grant DHS any additional powers listed in OCGA § 29-4-23.

[7] DHS initially removed the case to federal court based on claims the Plaintiff's raised under 28 USC § 1983, and that court granted DHS's and Tompkins' motion for judgment on the pleadings as to the § 1983 claims, remanding the case to superior court for adjudication of the state law claims.

that the plaintiffs initially misidentified her as a DHS employee and since then had made no showing of how she breached her duty to Garrett as a GAL, and she moved for attorney fees for abusive litigation, attaching an invoice for fees.

The Plaintiffs amended their complaint, alleging a negligence claim against Fields for breaching her duty as GAL and alleging negligence claims against DHS and Tompkins as appointed guardians. DHS renewed its motion to dismiss, and Fields requested a hearing on her motion to dismiss/motion for summary judgment.

After the hearing, the trial court granted Fields's motions to dismiss without explanation, and it dismissed the claims against DHS based on sovereign immunity. The court found that although the Georgia Tort Claims Act ("GTCA") applied generally, the Plaintiffs' claims were barred in this instance by either the discretionary function exception or the inspection exception to the GTCA. The trial court also denied the Plaintiffs' motion to compel or reopen discovery or for sanctions. This appeal followed.

1. The Plaintiffs argue that the trial court erred by granting DHS's motion to dismiss on the basis that their claims were barred by sovereign immunity. They contend that questions of fact exist as to whether DHS's duty to protect Garrett arose

5

when Tompkins took the oath of guardianship on April 8, 2013, relying on a DHS internal document that states DHS "was appointed Guardian on April 08, 2013."

The 1991 amendment to Art. I, Sec. II, Par. IX of the Georgia Constitution of 1983 recognized that sovereign immunity was extended to the state and all of its departments and agencies; that such immunity can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver, and that the General Assembly may waive the state's sovereign immunity from suit by enacting a State Tort Claims Act. Thereafter, the General Assembly enacted the [GTCA,][8] which provided for a limited waiver of the state's sovereign immunity and set forth exceptions to such waiver.[9] As a department of the state, the [DHS] is subject to the waiver and the exceptions set forth in the [GTCA].

Section 50-21-24 of the [GTCA] enumerates 13 exceptions to the waiver of sovereign immunity[. Applicable here are] exceptions (2) and (8) of [OCGA] § 50-21-24. Exception (2) provides that the state shall have no liability for losses resulting from: the exercise or performance of or the failure to exercise or perform a discretionary function or duty on the part of a state officer or employee, whether or not the discretion involved is abused. Under OCGA § 50-21-22 (2), discretionary function or duty means a function or duty requiring a state officer or employee to

---

[8] OCGA § 50-21-20 et seq.

[9] OCGA §§ 50-21-23; 50-21-24.

6

exercise his or her policy judgment in choosing among alternate courses of action based upon a consideration of social, political, or economic factors. Exception (8) provides that the state shall have no liability for losses resulting from: inspection powers or functions, including failure to make an inspection or making an inadequate or negligent inspection of any property other than property owned by the state to determine whether the property complies with or violates any law, regulation, code, or ordinance or contains a hazard to health or safety.[10]

The Plaintiffs contend that the trial court erred by finding that their claims against DHS were barred by sovereign immunity because there are questions as to whether DHS's duty to Garrett began when Tompkins took the guardianship oath — April 15, 2013 — or when the DHS document stated that it became guardian — April 8, 2013. We find no error by the trial court, however, because the final order for guardianship was not issued and DHS was not appointed guardian until May 10, 2013. Even if the delay between the hearing, the administration of the oath, and the appointment was merely based on issues with the application, Garrett had not been

---

[10] (Citations and punctuation omitted.) *Bruton v. Ga. Dept. of Human Resources*, 235 Ga. App. 291, 293-294 (509 SE2d 363) (1998). See also Ga. Const. of 1983, Art. I, Sec. II, Par. IX (a), (e).

adjudicated a ward prior to entry of the probate court's final order.[11] Thus, DHS could not have acted prior to that date.

Garrett argues that the discretionary act exception does not apply because DHS's failure to act to make determinations about Garrett's situation was not an act of discretion or was only a day-to-day administrative decision.[12] Pretermitting whether the issues of scheduling within any specific time frame was an administrative decision, the ultimate determination of whether to take Garrett into custody was a

---

[11] See OCGA § 29-4-13.

[12] See *Ga. Dept. of Human Svcs. v. Spruill*, 294 Ga. 100, 110-111 (2) (b) (751 SE2d 315) (2013) (holding that investigative decisions made in response to a child abuse allegation are discretionary functions). Compare *Brantley v. Dept. of Human Resources*, 271 Ga. 679, 682-683 (523 SE2d 571) (1999) (holding that day-to-day childcare decisions on the part of foster child's guardians were not discretionary functions).

discretionary one, involving issues of policy.[13] Accordingly, the trial court did not err by finding that sovereign immunity barred the claims against DHS.[14]

2. The Plaintiffs maintain that the trial court erred by failing to consider their motion to reopen and compel discovery and by denying their motion for sanctions based on discovery violations. In support of this enumeration of error, the Plaintiffs cite to *Dodson v. Sykes Indus. Holdings, LLC*,[15] which vacated a summary judgment order and remanded for further proceedings because of a pending motion to compel. The Plaintiffs contend that further discovery could have resolved conflicting testimony given by DHS regarding when DHS's duty to protect Garrett began and whether DHS exercised any discretion. Based on our holding in Division 1, however, that the guardianship did not begin prior to the entry of the final order and issuance

---

[13] See *Bruton*, 235 Ga. App. at 295 (holding that a decision as to whether an individual should have been relocated to a different care home was a policy judgment and therefore a discretionary function). See also *Spruill*, 294 Ga. at 110-111 (2) (b); OCGA § 29-4-23 (a) (1) ("[A] guardian *may* . . . [t]ake custody of the person of the ward.") (emphasis supplied); OCGA § 29-4-20 (a) (6) ("In every guardianship, the ward has the right to . . . [t]he least restrictive form of guardianship assistance, taking into consideration the ward's functional limitations, personal needs, and preferences").

[14] Based on this finding we need not address whether this case falls under the inspection exception to the GTCA.

[15] 324 Ga. App. 871, 876 (1) (752 SE2d 45) (2013).

9

of letters of guardianship by the probate court, the trial court did not err by declining to address this motion prior to addressing the issue of sovereign immunity.[16]

3. The Plaintiffs contend that the trial court erred by granting Fields's motion to dismiss their claim against her.[17]

In the first complaint, the Plaintiffs alleged that Fields worked for DHS and asserted a nuisance claim against her and DHS for failure to fulfill their duty to Garrett under the guardianship code and not as GAL. The Plaintiffs later amended their complaint, alleging that Fields, as the GAL, had a duty to move for an emergency guardianship or take other measures to prevent Garrett from harming herself. In paragraph two of the amended complaint, the Plaintiffs stated that "[u]pon the time of her appointment as [Garrett's GAL] until the time a permanent guardian for [Garrett] was appointed, Defendant Fields was responsible for monitoring and supervising [Garrett] and had an affirmative obligation to ensure her health, safety, and well-being." Plaintiffs, however, also admit that DHS was appointed permanent

---

[16] See, e.g., *Gallagher v. Fiderion Group, LLC*, 300 Ga. App. 434, 437 (2) (685 SE2d 387) (2009).

[17] To the extent that the Plaintiffs claim that the federal court order remanding the case to state court resulted in any determination on Fields's motion to dismiss the state law claims, the Plaintiffs have misread the order, which stated that the federal court declined to exercise supplemental jurisdiction over the state law claims.

guardian of Garrett prior to her death, and it is undisputed that the letters of guardianship were issued to DHS.

Pretermitting whether the Plaintiffs' own pleadings are facially self-defeating, we discern no legal duty that Fields could have breached under these facts. Former OCGA § 29-9-2 (a), limits a GAL'representation of a proposed ward to "*proceedings relating to guardianship or conservatorship of that individual.*" "The [GAL's] duty is to protect the [proposed] ward's rights"[18] during such a proceeding, and neither this Code section nor Fields's appointment as guardian ad litem created a duty on the part of Fields to at all times actively prevent Garrett from sustaining physical injury or the authority to prevent Garrett from movement from her home. Accordingly, the trial court did not err by dismissing the Plaintiffs' claims against Fields.

4. Finally, the Plaintiffs argue that the trial court erred by granting Fields's request for damages pursuant to OCGA 9-15-14. After dismissing all claims against Fields, the trial court granted her request for attorney fees in a cursory order for "[g]ood cause having been shown" and pursuant to OCGA § 9-15-14 (a) in the amount of $5,851.00.

---

[18] *Twitty v. Akers*, 218 Ga. App. 467, 469 (462 SE2d 418) (1995).

11

As this Court has explained, "an order awarding attorney fees pursuant to OCGA § 9-15-14 must . . . make express findings of fact and conclusions of law as to the statutory basis for any such award and the conduct which would authorize it."[19] Although the trial court correctly noted that it was awarding fees under subsection (a), it failed to articulate any findings of fact or conclusions of law in support of such an award. Accordingly, we vacate the trial court's award of attorney fees and remand the case for reconsideration of that award in light of this opinion..

*Judgment affirmed in part, vacated in part, and case remanded. McFadden, C. J., and Hodges, J., concur.*

---

[19] (Punctuation and citation omitted.) *Fulton County School Dist. v. Hersh*, 320 Ga. App. 808, 814-815 (2) (740 SE2d 760) (2013).